In the Matter of the Estate of FRANK L. SCOTT, Deceased.

Surrogate's Court, New York County, February 18, 1936.

*Pleasants & Sperry* [*Samuel A. Pleasants* of counsel], for the executor and trustee.

*Dawes, Abbott & Littlefield* [*Hobart S. Weaver* of counsel], for The Mutual Benefit Life Insurance Company.

*Barnett, Plaut & Schweitzer* [*Roy Plaut* and *Isaac M. Barnett* of counsel], for The Northwestern Mutual Life Insurance Company.

*Seacord, Ritchie & Young,* for Mary Belle Scott, interested as beneficiary, and Anne M. L. Scott, a beneficiary under a life insurance policy on the life of deceased.

*John P. O'Brien,* special guardian for infants.

DELEHANTY, S. On this executor's and trustee's accounting there is presented a question of apportionment of the Federal and the New York estate taxes which have been imposed upon a tax estate wherein certain insurance moneys were included. Such insurance moneys never reached the possession of the estate representative but out of the true estate assets he has been compelled to pay taxes largely occasioned by the inclusion in the tax estate of the insurance moneys. He now seeks in this proceeding under section 124 of the Decedent Estate Law to enforce a reimbursement by the insurance companies of the amounts paid out of the true estate assets in the proportion that the insurance funds included in the tax estate bore to the whole tax estate. The beneficiaries of the insurance policies are parties to the proceeding and so all the persons interested in the question are before the court.

Counsel for the insurance companies desire to have settled the question of insurance company liability in situations such as this. They question the right of the executor to enforce any liability against them. They assert that in any event they must be protected against excess liability under their contracts of insurance. They do not question the right of the State and the nation to impose a tax by reason of the falling in of the insurance contracts. They deny only that a liability on their part exists for the payment of the tax. At least one of the insurance companies asserts earnestly that the exaction of a tax from it would involve an unconstitutional impairment of the obligation of its contract.

In the case of one policy issued by Mutual Benefit Life Insurance Company there is provision that the proceeds of the death claim shall be paid in continuous monthly installments after the beneficiary attains a fixed age. In the case of other policies of this company it is provided that the proceeds shall be retained by the company with interest payable thereon and with the right of the beneficiary after particular dates to receive principal payments. In the case of the policies issued by Northwestern Mutual Life Insurance Company there is express provision that settlement of the full aggregate proceeds of said policies collectively shall be made in monthly installments. There is a subsidiary provision for withdrawal of a limited part of the proceeds by the beneficiary. There is provision for commuting " any proceeds then in the company's hands on account of said policies " upon the happening of certain

contingencies. It will be noted that the policies vary somewhat and that variance is made the basis of a contention that unless the contracts of insurance establish an actual fund in the hands of the insurance company at the death of the insured there exists no basis upon which any tax could be levied which would be payable by the insurance company. Argument in behalf of the insurance companies is made to the effect that the beneficiaries only are liable for the tax; or in any event that the insurance companies are obliged only to deduct the tax or some portion of it from the payments as and when they accrue to the beneficiaries under the policies.

The right of the State or Federal government to tax insurance funds of this nature cannot be questioned. (*Chase National Bank* v. *United States*, 278 U. S. 327.) In that case the court (at p. 338) said: " the power to tax the privilege of transfer at death cannot be controlled by the mere choice of the formalities which may attend the donor's bestowal of benefits on another at death, or of the particular method by which his purpose is effected." The incidence of death taxes is and for decades has been an integral part of the economics of states and nations. No subject has been more thoroughly publicized or more the subject of general agreement than the propriety of taxing the creation, the transfer or the final vesting of property rights by reason of death.

Section 10 of article I of the Constitution of the United States does not bar the immediate collection of a tax imposed by the State of New York upon whatever property rights have passed under these insurance contracts. The Supreme Court of the United States has said (*Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398, at p. 435): " Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. The policy of protecting contracts against impairment presupposes the maintenance of a government by virtue of which contractual relations are worth while,— a government which retains adequate authority to secure the peace and good order of society."

The Supreme Court of the United States further said in *Long Island Water Supply Co.* v. *Brooklyn* (166 U. S. 685, 692): " But into all contracts, whether made between States and individuals, or between individuals only, there enter conditions which arise not out of the literal terms of the contract itself; they are superinduced by the pre-existing and higher authority of the laws of nature, of nations or of the community to which the parties belong; they are always presumed, and must be presumed, to be known and

recognized by all, are binding upon all, and need never, therefore, be carried into express stipulation, for this could add nothing to their force. Every contract is made in subordination to them and must yield to their control, as conditions inherent and paramount wherever a necessity for their execution shall occur."

The same court, speaking through Mr. Justice HOLMES, said in *Hudson Water Co.* v. *McCarter* (209 U. S. 349, 357): " One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter."

Finally in *Norman* v. *Baltimore & Ohio Railroad Co.* (294 U. S. 240) the Supreme Court elaborated on the idea of Mr. Justice HOLMES and said:

" The conclusion was that contracts must be understood as having been made in reference to the possible exercise of the rightful authority of the Government, and that no obligation of a contract ' can extend to the defeat ' of that authority " (p. 305).

" Contracts, however express, cannot fetter the constitutional authority of the Congress. Contracts may create rights of property, but when contracts deal with a subject matter which lies within the control of the Congress, they have a congenital infirmity. Parties cannot remove their transactions from the reach of dominant constitutional power by making contracts about them " (pp. 307, 308).

The constitutional limitation upon the power of the States to impair the obligation of contracts must be understood in the light of the principle that the essential attributes of sovereign power are deemed written into every contract. Parties cannot by form of contract undertake to defeat the power of the State to tax transfers and to impose death duties. Contracts effective at death and creating or transferring property rights at death must be deemed to have written into them a term which preserves the State's tax right. Under the principles of law declared by our supreme judicial authority on constitutional questions it is apparent that no private contract can bar by textual phrasing the collection by the State of its taxes upon property rights which may be subjected to a lawful tax.

For the consideration of the question here it is only a form of words which distinguishes one insurance contract from another. They essentially are the same thing. In the one contract there is reference to policy proceeds. In another there is reference to an installment contract or to an annuity contract or like phrasing. It is not suggested that in the case of either there is an actually segregated deposit of money built up by the premium payments on

the respective policy and limited entirely to the earnings upon these specific premium payments. In each type of policy the premium payments go into the general funds of the insurance company. The credits to the contracts of insurance are credits in pursuance of an actuarial plan which operates either in respect of all policies of insurance or in respect of all policies of the particular class. The general assets of the corporation are the sole source out of which the policyholder may expect his contract to be performed. At the instant of death there was no segregated and identifiable body of property in either company which was then and there earmarked as the proceeds of these particular insurance contracts. While in the one case the contract may talk about a fund or the policy proceeds or by like description may refer to a fund to be segregated, and while in the installment contract or annuity contract there is no comparable language which speaks of a segregated fund, the underlying fact is that the contract of insurance in each case operates to impose upon the insurance company and its general assets a liability to do the things and to pay the money provided for either explicitly in the terms of settlement in the contract or made subject to options to be selected by the beneficiary.

The lack of a segregated fund does not bar collection by the sovereign of its tax upon the property right passing by reason of the insurance contract. If it were to be said that the parties might so contract between themselves as to compel the sovereign to pursue the fund in the hands of the beneficiary only or that the parties could contract between themselves so that payment to beneficiaries might be largely postponed, the sovereign might be hampered in the collection of a tax necessary to the administration of government. It is not suggested that these insurance contracts envisage that result or are designed to effect it. The cases cited make clear that if any such attempt were made it would be futile.

As a matter of practical administration of the Tax Law and hence of enforcement of the most fundamental of all government rights, these insurance contracts, no matter in what form prepared by the parties, must be deemed to establish a fund or a body of property or a property right having immediate value and that (again no matter what the form) the sovereign has the right to exact from that fund, from that body of property or from that property value whatever tax it has lawfully imposed by reason of the creation, transfer or final vesting of such fund, property or value. The need for certainty in the collection of taxes and for convenience in the administration of the Tax Law both compel this interpretation of these contracts and of the State's right in relation thereto.

The purchaser of an insurance contract and the insurance company which writes it are each unaware at the date of its execution whether in fact a tax will be imposed upon the rights created under it. Policies identical in form, in date and in maturity may in the one case provide a tax base and in another be free of tax because in the one case the property rights passing by death (inclusive of the insurance) may create a taxable estate while in the other the insured may have been insolvent and the insurance proceeds may be insufficient alone to create basis for a tax. There is deemed to be written into each contract, nevertheless, a clause which says in substance that immediately upon the death of the insured there is payable out of the policy proceeds (no matter in what form these are described in the written terms of the policy) the amount of the tax lawfully imposed thereon and that the benefits then accruing under the policy are deemed to be readjusted on an actuarial basis to the amount which would be payable had the policy terms in express words provided for the immediate payment of the death tax by the insurance company.

Since this unwritten term is deemed to be in the policy because the power of the sovereign operates under the contract of insurance it is not to be supposed that the sovereign has written the clause in any terms except such as secure to it both speed and certainty in the collection of its tax. In the practical enforcement of a sovereign right it cannot be supposed that the sovereign having unrestricted choice of collection sources would elect to take payment in installments or to pursue the individual beneficiary. Since the tax here is not a transfer tax but a true estate tax it is clearly collectible out of the corpus of the taxable estate before any part of it reaches the beneficiaries. For every reason of convenience and certainty of collection the payment should be required of the insurance company and it in turn should make the necessary adjustments with the beneficiaries. There is no violation of the rights of the insurance company which undertook only the annuity or installment payments. Its contract contained the unexpressed agreement of the parties that the State should have its lawfully imposed tax. In a situation in which the so-called fund or policy proceeds are distributable in bulk the contract (because of the unexpressed tax clause) provides that the amount distributable is not that stated in the policy but the sum so stated less the lawful tax. In the case of the policy of insurance which by its terms provides for installment payments the actual contract is for the payment to the sovereign of the tax lawfully imposed upon the property right passing under it and for the payment to the beneficiaries of installments readjusted actuarily so as to impose upon the insurance

company no greater burden and to insure to the beneficiaries no greater rights than would have been expressed in the contract had the amount of the tax been known in advance and provision for its payment expressly made.

Cases frequently arise in which the estate representative is without funds to pay taxes imposed upon the artificial tax estate created by the Tax Laws. The inclusion in such tax estate of insurance funds and of the value of property passing by a power of appointment, etc., frequently puts upon an estate representative an obligation to pay without giving him the wherewithal with which to pay. Here the executor has actually paid the tax out of true estate funds. He has by operation of the statute a right of subrogation to the position of the sovereign whose claim he has paid and consequently he has in this instance the right to enforce against the insurance companies the same claims which the sovereign might have enforced had the tax not been paid.

Pages 2 and 3 of Schedule I of the account as filed contain a distribution of the Federal estate tax. Page 10 of the same schedule contains a distribution of the burden of the New York estate tax. The manner of computation adopted by the executor seems to the court to be correct and will be adopted. Such computations prorate the burden of the tax in proportion to the value of the benefits which the respective persons derived from the tax estate after making proper allowances for exemptions. The payments there starred with the footnote indicating that they refer to refunds constitute the items which the executor is entitled to have paid to him by the respective insurance companies indicated on the schedule. The insurance companies in turn are authorized to deduct the amounts so paid from the benefits accruing to the beneficiaries under the policies. Such of the beneficiaries as have been furnished with certificates of interest or other instruments indicating their rights under the policies are directed to return such evidences to the companies respectively for indorsement or for cancellation or for reissue of an appropriate certificate evidencing more accurately the actual interest of the respective beneficiaries. In the unlikely event of controversy over the recasting of the beneficiaries' interests the court at the foot of the decree to be entered settling the account will entertain further application by any party deeming himself aggrieved.

Submit, on notice, decree apportioning the burden of the Federal and State estate taxes in accordance with this opinion and settling the account as filed.