### In the Matter of the Estate of BERNARD ZAHN, Deceased.

Surrogate's Court, New York County, December 13, 1946.

*Scandrett, Tuttle & Chalaire* for William Dunkak and another, surviving executors, and Miner W. Tuttle as executor of Melvin G. Palliser, deceased executor, petitioners.

*Eugene T. O'Neill* and *Leo D. Fitzgerald* for Equitable Life Assurance Society of the United States, respondent.

*H. A. & C. E. Heydt* for Charlotte E. Higby and another, respondents.

*Eugene M. McCarthy* for Berthold Burck, respondent.

DELEHANTY, S. Baldly stated, the question presented in this accounting proceeding is whether the creditors of deceased shall pay the estate taxes on moneys which never constituted part of the true estate of deceased but which were included in the gross tax estate only because of the tenor of applicable tax laws. The true estate accounted for was valued originally at about $34,000. Administration expenses other than estate taxes amount to about $5,000. During the administration period there were decreases in original capital value of a little over $4,000. If this decrease in principal value and this total of administration expense are deducted from the original capital value of the estate there is left less than $25,000. There are claims against the estate in excess of $25,000. Thus, the true estate of deceased, if dealt with as a separate unit, would not have been taxable at all.

The estate taxes were imposed solely because of inclusion in the gross tax estate of the proceeds of life insurance on the life of deceased aggregating about $250,000. The estate taxes originally assessed and paid by the executors amounted to about $18,000. This tax was computed on less than the total insurance. In addition to the originally taxed insurance proceeds there was a further policy for $50,000 payable to the divorced wife of deceased. In the original estate tax proceedings the executors successfully contended that the proceeds of this policy should not be included in the gross tax estate.

However, after the decision in *Helvering* v. *Hallock* (309 U. S. 106) the excluded policy proceeds were held to be taxable and a further tax was assessed of about $6,000. The payment of that tax substantially exhausted the true estate assets.

The divorced wife of deceased who was beneficiary of the policy last mentioned demanded payment of it shortly after deceased's death. She first received a part payment on account and then instituted an action in the Supreme Court, New York County, to recover the balance. That action was settled on July 7, 1937, by payment of the balance to the beneficiary. The beneficiary died on June 5, 1940, an inmate of a State institution. She was destitute at death and no recovery of estate taxes allocated to her policy can be made out of the proceeds of the policy in her hands since they apparently were wholly dissipated before her death. The supplementary estate tax payment was exacted from the executors some two months after the death of the insurance beneficiary.

A statement of the finances of the estate will exhibit the problem. The executors paid estate taxes in a total sum of $25,006.78. They collected from the son of deceased who was beneficiary of certain insurance the sum of $5,150 in part discharge of his liability for estate taxes. The balance of estate taxes uncollected is $19,856.78. All of this tax balance is attributable to insurance moneys which never came into the executor's hands and concededly the respective insurance funds should reimburse the true estate ratably. If the amount still uncollected on estate taxes is received and added to the reported cash on hand of $153.29, the executors will have $20,010.07 on hand. The unpaid creditors' claims reported in schedule D-4 total $19,691.89. Assuming full collection of the estate tax contributions there will be a small surplus of $318.18.

If the tax contribution due from the proceeds of deceased's insurance for his divorced wife is uncollectible because she is dead leaving no estate, the result to the creditors is obvious. The total amount due as reimbursement is as before, $19,856.78. If the death of the divorced wife of deceased makes impossible collection of the share attributable to her policy — $4,699.92 — the actual collectible balance is only $15,156.86. If the cash on hand of $153.29 is then added the executors will have in hand only $15,310.15 to pay creditors' claims of $19,691.89. The consequence to the creditors is that they are confronted with a deficit of $4,381.74. It may be assumed that the creditors do not subscribe to the idea that true estate assets which pri-

marily were a trust fund for their benefit shall be thus appropriated to their detriment.

There seems to be no doubt of the collectibility of all tax contributions except that which arises because of the policy for the benefit of deceased's divorced wife. That policy was issued by an insurance company which has appeared in the proceeding. It denies liability for any part of the tax. It says that it complied with section 249-cc of the New York Tax Law before making payment of the policy proceeds to the named beneficiary. It asserts also that it no longer has possession of any policy proceeds and so cannot be held accountable. So far as the reference to the New York Tax Law is concerned the court holds it to be irrelevant. The tax imposed upon the policy proceeds in controversy was a Federal tax and not a State tax. So far as the insurance company claims immunity because it has paid out the policy proceeds *in toto,* an examination of some basic principles seems to be required.

It may be said at once that the constitutionality of section 124 of the Decedent Estate Law has been finally established (*Riggs v. del Drago,* 317 U. S. 95). So, too, it seems to be established beyond further agitation that an insurance company may not deny liability for the tax on the ground that its policy payments are in discharge of a contract obligation merely and that, prior to payment, it had no earmarked fund attributable to any insurance policy (*Matter of Scott,* 158 Misc. 481, affd. 249 App. Div. 542, affd. 274 N. Y. 538, certiorari denied *sub nom. Northwestern Mutual Life Insurance Co.* v. *Central Hanover Bank & Trust Co.,* 302 U. S. 721). It is also established by *Matter of Scott* (*supra*) that an insurance company has the right to adjust its liability for payments under a matured policy so as to reserve the amount of the tax required to be paid. The balance only of the proceeds is due the beneficiary.

In *Matter of Scott* (*supra*), in *Matter of Ryle* (170 Misc. 450, 461–463) and in *Matter of Harjes* (170 Misc. 431, 433–434) this court discussed controlling authorities which say that the tax due the sovereign on the devolution of property is exacted as a toll and that *only the balance* passes to the beneficiary. The cases in this State and in the Supreme Court of the United States remove from argument the question whether the possessor of the fund holds the Government's share as well as the beneficiary's share. When consideration is given to the fact

that the insurance fund or contract is itself apportioned at the instant of death between the beneficiary and the sovereign it becomes at once apparent that the defense interposed by the insurance company of payment out by it of the entire contract amount is not an answer at all. The case relied upon by the insurance company (*Matter of Sullivan*, 185 Misc. 21) seems to this court to have ignored the principles established in *Matter of Scott* (*supra*) and for that reason will not be followed by this court.

Under the law settled by controlling authority there was in the hands of the insurer at the moment of deceased's death the sum of $4,699.92 which was the property of the Government of the United States. The insurer has never paid that money to the Government. It voluntarily gave the beneficiary the equivalent of the Government's share in addition to the share due the beneficiary. It says that it paid the beneficiary of the policy in good faith. It is clear of course that the executors too acted in good faith and also under compulsion. It is clear, too, that whatever right the Government had in the fund just mentioned passed by subrogation to the executors. They stand in the shoes of the Government in this controversy and have the same right to enforce the liability of the insurance company as the Government would have had before the executors paid the additional assessment. As this court said in *Matter of Scott* (*supra*, p. 486): "The purchaser of an insurance contract and the insurance company which writes it are each unaware at the date of its execution whether in fact a tax will be imposed upon the rights created under it. Policies identical in form, in date and in maturity may in the one case provide a tax base and in another be free of tax because in the one case the property rights passing by death (inclusive of the insurance) may create a taxable estate while in the other the insured may have been insolvent and the insurance proceeds may be insufficient alone to create basis for a tax. There is deemed to be written into each contract, nevertheless, a clause which says in substance that immediately upon the death of the insured there is payable out of the policy proceeds (no matter in what form these are described in the written terms of the policy) the amount of the tax lawfully imposed thereon and that the benefits then accruing under the policy are deemed to be readjusted on an actuarial basis to the amount which would be payable had the policy terms in express words provided for the immediate payment of the death tax by the insurance company.

" Since this unwritten term is deemed to be in the policy because the power of the sovereign operates under the contract of insurance it is not to be supposed that the sovereign has written the clause in any terms except such as secure to it both speed and certainty in the collection of its tax. In the practical enforcement of a sovereign right it cannot be supposed that the sovereign having unrestricted choice of collection sources would elect to take payment in installments or to pursue the individual beneficiary. Since the tax here is not a transfer tax but a true estate tax it is clearly collectible out of the corpus of the taxable estate before any part of it reaches the beneficiaries. For every reason of convenience and certainty of collection the payment should be required of the insurance company and it in turn should make the necessary adjustments with the beneficiaries."

There is here no occasion to look to anyone but the insurance company for the money necessary to pay the tax. Its good faith in handing over to the beneficiary the equivalent of the Government's tax money is no defense. Like any other taxpayer it was bound to reserve enough to meet the tax until the Government was completely foreclosed of any opportunity to impose the tax. Having failed to do so it must now pay as demanded.

The figures used in this decision have been taken from the account and may be subject to modification. The court has considered only the basic problem since that is what the parties have argued. It does not intend by this decision to foreclose any claim of the respondent insurance company that the amount computed in the account as allocable to the particular insurance policy is incorrectly stated. If there be reason for modification of that figure the facts either can be stipulated or the matter will be restored to the calendar for hearing.

If the parties are in agreement a decree may be submitted, on notice, directing payment and settling the account accordingly.

### (On reargument, April 7, 1947.)

DELEHANTY, S. In its prior decision the court sufficiently outlined the factual background on the basis of which it held the respondent insurance company liable for a portion of the Federal estate tax imposed upon the tax estate of deceased. Application is now made for reargument. The parties have been again fully heard. Some restatement of the applicable factors in the problem seems desirable.

Executors are charged by the Federal statute with the obligation to conduct estate tax proceedings. The Federal tax statute makes the executor the representative of every person or interest affected by the tax proceeding. In such a proceeding therefore the tax ultimately imposed is a tax imposed after all parties affected have had opportunity for a hearing and have in fact been heard through the executor, their representative.

In respect of funds included in the gross tax estate and in possession of persons other than the executor taxability and liability for the tax are indivisible. It is impossible to separate the fact of liability from the adjudication of taxability because of the very nature of a death tax.

Such a tax is an excise imposed upon the fund at the instant of death. As was said in *New York Trust Co.* v. *Eisner* (256 U. S. 345, 349): "As to intestate successors the tax is not imposed upon them but precedes them and the fact that they may receive less or different sums because of the statute does not concern the United States." Again in *Frick* v. *Pennsylvania* (268 U. S. 473, 498–499) the court said: "While the Federal tax is called an estate tax and the state tax is called a transfer tax, both are imposed as excises on the transfer of property from a decedent and both take effect at the instant of transfer." The point is emphasized in *Edwards* v. *Slocum* (264 U. S. 61, 62) where the court said of the Federal estate tax that it "comes into existence before and is independent of the receipt of the property by the legatee." The idea is stated in still another way in *Young Men's Christian Assn.* v. *Davis* (264 U. S. 47, 50): "What this law taxes is not the interest to which the legatees and devisees succeeded on death, but the interest which ceased by reason of the death." Finally in *Knowlton* v. *Moore* (178 U. S. 41, 54) the court in discussing a Federal tax quoted as applicable to such a tax from the case of *United States* v. *Perkins* (163 U. S. 625, 628) — a case dealing with a tax — and said: "The tax is not upon the property in the ordinary sense of the term, but upon the right to dispose of it, and it is not until it has yielded its contribution to the State that it becomes the property of the legatee."

Since we are here dealing with a State statute of apportionment held by the United States Supreme Court to be applicable to Federal taxes (*Riggs* v. *del Drago,* 317 U. S. 95) it should be noted that the concept of estate taxes held by the courts in

the State of New York differs not at all from that just quoted from the Federal cases. In *Matter of Swift* (137 N. Y. 77, 84) the court said of the death tax: " It reaches out and appropriates for its use a portion of the property at the moment of its owner's decease; allowing only the balance to pass * * *." The idea was reiterated in *Matter of Penfold* (216 N. Y. 163, 167) where the court said: " The tax (so-called) is the toll or impost appropriated to itself by the state for or in connection with the right of succession to property. It accrues, therefore, at the same time that the estate vests, that is upon the death of the decedent."

Since the insurance policy proceeds were in fact taxed and since both the taxability of the fund and the liability of its possessor to pay the tax were established in the estate tax proceeding there remains no doubt that at the instant of the death of the insured the fund payable by reason of that death had been segregated into two components. The one was the toll or impost which at the instant of death became due to the United States. The other was (to again quote *Matter of Swift, supra*) " only the balance " which became payable to the policy beneficiary.

It does not serve the respondent insurance company to argue that deceased was indebted to the policy beneficiary nor does it serve respondent to point to the terms of the will which apparently recognize some obligation of deceased to her. There is no doubt that under the policy the insured or his estate would have taken the proceeds (less the tax on them) had the policy beneficiary died before deceased. That fact rendered the proceeds taxable under Federal law (*Helvering v. Hallock,* 309 U. S. 106; *Hock* v. *Commissioner of Internal Revenue,* 152 F. 2d 574; *Bodell* v. *Commissioner of Internal Revenue,* 138 F. 2d 553, certiorari denied 321 U. S. 778). Under the cited cases the executor could not successfully have resisted the inclusion of the policy proceeds in the taxable estate.

But in any case this court proceeds in an apportionment of taxes on the basis of " the actual fact of inclusion or exclusion of property by the taxing authorities." (*Matter of Kaufman,* 170 Misc. 436, 445.) There is no room in a proceeding for apportionment to reargue the fact of taxability. That is determined once and for all in the tax proceeding proper. There may remain open to the beneficiaries of a taxed fund an opportunity to question the executor's conduct of the tax proceeding and to seek a surcharge of his accounts. If, for instance,

it were shown that there had been gross neglect by the fiduciary in the tax proceeding the general power of the court to regulate the conduct of a fiduciary and to compel a faithless fiduciary to make good a loss occasioned by his dereliction could be invoked to compel restitution to the beneficiary compelled to pay an excessive tax (*Matter of Chisholm*, 177 Misc. 423, affd. 264 App. Div. 793, affd. 290 N. Y. 842; *Matter of Israel*, 166 Misc. 156, affd. 256 App. Div. 1063, motion for leave to appeal denied 281 N. Y. 886). But the remedy thus available is enforcible only under general principles of estate administration in the forum where the estate proper is under administration. The remedy presupposes the actual fact of the loss by reason of the payment of the tax and so presupposes liability for the tax. Here no such question is raised and on the record none could be raised.

As there is no basis for imposing upon the executors any part of the tax burden on the insurance proceeds it follows that the executors are entitled to recover from the insurance company the Government's share of such proceeds which in contemplation of law is still in the hands of the insurance company. The cited cases on the nature of an estate or death tax make it clear that the beneficiary of the insurance policy had an interest only to the extent of the balance remaining after the tax had been deducted. The voluntary payment to her in excess of that amount cannot serve to shift from the insurance company the obligation to pay the Government's share of the proceeds still in its hands. That share is demandable of right by the executors. Whether that right can correctly be described as a right of subrogation is unimportant. The executors have precisely the same right against the insurance company as the Government would have had to exact payment of the share in policy proceeds constituting the tax. It is no answer to the executor's demand to say that payment of a like amount was made to the beneficiary.

Some notice ought to be taken of the contention urged on the oral argument that prompt payment to a beneficiary is essential to the business of insurance because of the competitive conditions in that industry. It may well be that as a matter of competition with others in the industry an insurance company is willing to take a chance that it will be held liable for a tax on policy proceeds. The company may measure the prospect of its liability for a tax plus its inability to collect it from the beneficiary and may determine as a matter of business

policy that the risk can be undertaken and the loss occasioned by the risk be obsorbed in the general expenses of doing business. Those considerations are of interest to the directors or trustees of insurance companies but they do not concern at all the question of liability for the tax.

For the reasons stated in this and the prior decision of the court the insurance company is held still to 'be in possession of that share of the policy proceeds exacted as a Federal estate tax thereon. It is held now liable to the executors of deceased as claimed by them. The decree to be entered may recite the making of the motion for reargument and this disposition of it.

Proceed accordingly.