In the Matter of the Accounting of FLORENCE M. GROSS et al., as Executors of MORITZ GROSS, Deceased.

Surrogate's Court, New York County, August 13, 1953.

*Albert Blumenstiel* for executors, petitioners.

*Robert Brosnan,* special guardian for Philip Gross, **Jr.,** an infant, respondent.

*Richard Steel* for Florence M. Gross, individually, respondent.

*Leo D. Fitzgerald* for Equitable Life Assurance Society of the United States, respondent.

FRANKENTHALER, S. The accounting executors have requested a construction of decedent's will to determine the proper method of apportionment and collection of estate taxes. Testator died October 23, 1947, and in paragraph eleventh of the will he directed that: '' All estate, inheritance, transfer, legacy, succession or other similar taxes and duties which may be assessed upon the legacies and devises provided in and by this Will shall be paid out of my residuary estate.'' There was included in decedent's gross taxable estate the value of an annuity purchased by him July 1, 1938, which obligates the issuing

company to pay to decedent during his life, and thereafter to his widow during her life, the monthly sum of $191.30. The widow contends that the amount of tax apportionable to the annuity should be paid from the residuary estate pursuant to the terms of paragraph eleventh of the will. Citation was issued to the insurance company which has appeared and contends that in the event any tax is apportioned to the annuity such tax may not be collected from the company as it is neither a person "interested in the estate" nor a person "in possession of property" included in the taxable estate, within the contemplation of section 124 of the Decedent Estate Law.

The court holds that paragraph eleventh of the will is not a clear and unambiguous direction against the apportionment of taxes to the annuity and that it is limited in its operation to the bequests contained in the will (*Matter of Mills,* 189 Misc. 136, affd. 272 App. Div. 229, affd. 297 N. Y. 1012; *Matter of Townsend,* 200 Misc. 740; *Matter of Liebovitz,* 197 Misc. 123). This leaves for determination the question of whether the insurance company is liable for the amount of tax apportionable to the value of the annuity contract.

The terms of the contract require the company to pay the specified monthly amount during the lives of both decedent and his wife. This obligation was to terminate upon the death of the survivor regardless of the amount theretofore paid. The contract contains no cash surrender value, loan value or death benefits nor does it contain a guaranty on the part of the company to make any specified number of payments nor to pay over any specified aggregate amount of money. In this latter respect, the annuity contract is distinguishable from a life insurance policy.

Section 124 of the Decedent Estate Law as originally enacted, directed that in the absence of a contrary direction by testator, estate taxes "shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues. * * * For the purposes of this section the term 'persons interested in the estate' shall have the same meaning with respect to both state and federal taxes as is given it by section two hundred forty-nine-m of the tax law." (Decedent Estate Law, § 124, subd. 1.)

The executor was empowered "to recover from whomever is in possession, or from the persons interested in the estate, the proportionate amount of such tax payable by the persons interested in the estate" (§ 124, subd. 1, par. 2).

No specific provision was made with respect to annuities but the Combined Reports of the Decedent Estate Commission stated: (p. 339) "Under the proposed section, the amount of taxes apportioned against the entire value of the annuity will be paid out of the fund set aside for its payment. It is the intention that the taxes so apportioned will be amortized as the installments of the annuity are paid. (*Matter of Tracy*, 179 N. Y. 501.)" With respect to common-law annuities, "a typical example of which is a gift of $5,000 per year to a named beneficiary, without indication of any specific fund from which such payment is to be made" (see report, *supra*), the executor is required to set aside a fund sufficient to pay the annuity, to deduct from the said fund the amount of tax apportionable thereto, and to amortize the deduction over the normal life expectancy of the annuitant. (See *Matter of Thomas*, 197 Misc. 552, 554; *Matter of Blumenthal*, 182 Misc. 137, affd. 267 App. Div. 949, affd. 293 N. Y. 707.)

Section 124 was amended in 1950 and subdivision 1 now provides for equitable apportionment among "the persons interested in the gross tax estate * * * to whom such property is or may be transferred or to whom any benefit therein accrues, hereinafter called the ' persons benefited ' ". "The bill is mainly declaratory of existing law * * *. Its purpose is to clarify the principles and procedure relating to estate tax apportionment." (Report of Executive Committee of the Surrogates' Assn.) As testator died in 1947, the 1950 amendments are inapplicable (L. 1950, ch. 822, § 2).

Section 124 makes a clear distinction between "persons interested in the estate" and persons "in possession". Primary liability for apportionment is imposed upon the former as defined in subdivision (g) of section 249-m of the Tax Law: "The term ' person interested in the estate ' shall include all persons who may be entitled to receive or who have received any property or interest which is required to be included in the gross estate of a decedent, or any benefit whatsoever with respect to any such property or interest, whether under a will, or intestacy, or by reason of any of the transfers, trusts, estates, interest, rights, powers, and relinquishment of powers as severally enumerated and described in section two hundred forty-nine-r of this article."

It is well settled that an insurance company is not a "person interested in the estate * * * a person interested in the decedent's estate within the contemplation of the law (Decedent Estate Law, § 124) shall be possessed of a beneficial interest.

The insurance company has not received, nor is it entitled to receive any property by reason of the insured's death or in connection with his estate. * * * the beneficiary of the policy is the only one acquiring an interest in the taxable estate at the time of the decedent's death with respect to such funds.'' (*Matter of Zahn,* 273 App. Div. 476, 481–82, affd. 300 N. Y. 1.) In the case at bar, the issuing company does not succeed to a benefit by reason of decedent's death and the annuitant is the sole person '' benefited '' or '' interested in the estate.''

As the company is not primarily liable, recovery may be had only if it is found to be '' in possession '' of property included in the taxable estate. This presents a more difficult issue which requires analysis of the decisions in *Matter of Scott* (158 Misc. 481, affd. 249 App. Div. 542, affd. 274 N. Y. 538, certiorari denied *sub nom. Northwestern Mut. Life Ins. Co.* v. *Central Hanover Bank & Trust Co.,* 302 U. S. 721) and *Matter of Zahn* (188 Misc. 856, revd. 273 App. Div. 476, affd. 300 N. Y. 1).

In *Matter of Scott, (supra),* decedent was insured under several policies which obligated the issuing companies to pay over the proceeds to the beneficiaries in installments in accordance with the terms of optional settlement agreements. The executor paid a tax based upon the inclusion of these policies in decedent's estate and sued to recover from the funds in the hands of the companies a proportionate amount of such tax. The right to reimbursement was granted and the companies were directed to pay to the executor the amount of tax allocable to the proceeds. The trial court premised its decision upon the following bases: first, that the right of the sovereign to tax and to collect the tax may not be impaired by contract between private persons; second, that in writing an insurance contract, the parties are deemed to have included a clause providing that the amount of tax levied thereon is immediately payable from the proceeds and that the beneficiary succeeds only to the amount in excess of the government's '' toll ''; third, that the executor is subrogated to the sovereign's right to collect the amount of tax; and fourth, that as the parties are deemed to have contracted in light of the tax payable there is no impairment of the right to contract.

Upon appeal the Appellate Division, First Department, affirmed by a vote of 3–2. The majority opinion, written by then Presiding Justice MARTIN, stated that upon the death of the insured there was a transfer of property — the proceeds

of the policy — sufficient to permit the application of section 124 and that there were funds in the hands of the insurers subject to apportionment. The argument that this impaired contractual rights was summarily rejected. This determination was affirmed without opinion by the Court of Appeals.

A more serious problem was presented in *Matter of Zahn* (*supra*). Decedent had taken out life insurance payable to his wife and shortly after his death the proceeds were distributed to her after notice to the State Tax Commission pursuant to section 249-cc of the Tax Law. She died several years later destitute and recovery of the allocable estate taxes could not be had as she had dissipated the funds. The executors then sought reimbursement from the insurance company as one in possession of property. It appeared that the gross estate, exclusive of insurance proceeds, was not subject to estate tax, and that if the taxes incurred by reason of the inclusion of the insurance proceeds in the taxable estate were paid from the testamentary estate insolvency would result. The Surrogate held that the insurance company was liable, relying upon his reasoning in *Matter of Scott* (*supra*), that the tax becomes due immediately upon death and that only the balance of the proceeds in excess of the amount of such tax passes to the beneficiary. The executors, said the court, are entitled to be subrogated to the Government's lien in order to avoid burdening the estate with taxes attributable to property passing to third persons.

The Appellate Division, First Department, unanimously reversed this determination and held that the insurance company was not liable for contribution as a person in possession when it had paid out the policy proceeds prior to the commencement of the apportionment proceeding. The court construed the clause " in possession " as requiring that there be property in the hands of the company at the time of the application for proration.

With reference to its prior decision in the *Scott* case, the court disapproved the rationale expressed by the lower court and stated " the *Scott* case was regarded as dealing with the situation where a contract obligation on the part of the insurer to pay insurance funds to a policy beneficiary still subsists at the time of the apportionment proceeding and the insurance company is in possession of the taxable property. * * * The question for determination was whether the insurance moneys held by the insurer under the agreement to make payment in

installments constituted property in the possession of the insurance company in the absence of segregation from its general assets." (P. 483.)

The effect of the Surrogate's ruling, said the court, was to make the insurance company a withholding agent for the payment of taxes. This was considered to contravene the purpose of section 249-cc of the Tax Law, which empowers such company to pay up to $20,000 to a beneficiary upon notice to the tax commission. Moreover, the Internal Revenue Code, as construed, contains no authority to the Government to collect from anyone other than the beneficiary Federal taxes upon the transfer of life insurance proceeds (*John Hancock Mut. Life Ins. Co.* v. *Helvering,* 128 F. 2d 745; *Equitable Life Assur. Soc.* v. *Commissioner,* 19 U. S. T. C., p. 264). As the Federal Government did not reserve to itself the right to secure reimbursement, it was held that there could be no subrogation in favor of the executors. Finally, " To hold otherwise would require an insurance company to retain the death claim proceeds of an insurance policy regardless of amount until the taxes on an insured's estate should be determined and their payment secured. This would so drastically curtail the rights of insurance beneficiaries and interfere with the proper functioning of the insurance business that we cannot conceive that the Legislature intended any such result ". (*Matter of Zahn,* 273 App. Div. 476, 487.)

The Court of Appeals unanimously affirmed the decision of the Appellate Division on the ground the company was not in possession of property at the time the executor sought reimbursement. The court stated: " In *Matter of Scott* (249 App. Div. 542, affd. 274 N. Y. 538) we affirmed the holding of the Appellate Division that an insurance company could be held liable for the proportionate share of the tax attributable to proceeds of insurance policies held *on deposit* by it. It was there thought that a sufficient change in the nature of the holding had taken place to justify an assertion that the insurance company was ' in possession ' of the property though the funds had not been segregated from the general funds of company." (*Matter of Zahn,* 300 N. Y. 1, 9–10.) The theory of the trial court was explicitly rejected.

In 1950, section 124 was amended (L. 1950, ch. 822) and the draftman's notes state: " It is not intended to modify or affect in any way the decisions in Matter of Scott (274 N. Y. 538) Matter of Zahn (300 N. Y. 1) and Matter of Sullivan (185 Misc. 21) respecting insurance proceeds."

As a result, the " toll theory " expressed by the lower court in both the *Scott* and *Zahn* cases has been rejected as a basis for decision (compare, also, *Matter of Harjes*, 170 Misc. 431 with Decedent Estate Law, § 124, subd. 3, cl. [iv] as amd. by L. 1950, ch. 822) and attention must be directed solely to the question of whether the insurance company is a person " in possession " of property.

In *Matter of Zahn* (*supra*), the Court of Appeals, in explaining the basis of its affirmance in the *Scott* case, construed the phrase " in possession " as referring to a fixed amount held *on deposit* with the insurance company. Although the liability of the insurers in the *Scott* case was contractual only, and there was no segregation of funds by the companies, the court required them to reimburse the executor on the ground that the obligation to pay at least a fixed minimum amount was to be deemed " possession " for the purposes of section 124. The facts of the present matter fall between those in the *Scott* and *Zahn* cases, and the principle stated by the Court of Appeals in the latter delineates the area, in such cases as these, within which the collection of estate taxes from insurance companies will be authorized.

Under the circumstances here presented, the court holds that the insurance company is not in possession of any property within the contemplation of section 124. The contractual obligation of the company is to make the specified payments on the first day of each month provided the widow is then alive. There is no requirement that it pay out a fixed minimum amount nor does it hold any funds on deposit. The company is not a stakeholder or trustee in possession of ascertainable funds but is rather a debtor whose liability is conditioned upon the survival of the annuitant on the first of each month. Whether the liability be deemed subject to a condition precedent or a condition subsequent, the obligation does not mature until the first of each month, and, then, only to the extent of that payment. Death at any time prior to the aforesaid date terminates the company's engagements under the contract. As the liability of the company cannot be ascertained as any fixed sum, however small, and as its obligation matures periodically only, it cannot be said to be in possession of property within the contemplation of the statute. Moreover, the reserves retained upon each annuity contract do not inure to the benefit of the particular agreement but are merged to form a general reserve for all similar contracts issued to persons of the same age as the annuitant. Depletion of this reserve would not only

contravene the terms of the individual agreement but would jeopardize the rights of other annuitants of the same class.

*Matter of Scott (supra)*, is not controlling in the present situation. In that case the insurers were considered to be in possession of fixed amounts which they had contracted to pay over. Under no circumstances could they avoid their obligation to pay at least the amount so held, and the appellate courts placed emphasis upon the fact that the terms of the policies referred to a " ' principal amount retained ' " and " 'proceeds then in the company's hands ' " which indicated " a conception of something more than ' obligations ' on the part of the insurance company." (*Matter of Scott*, 249 App. Div. 542, 545.) Here there is no " principal amount " or " proceeds " in the hands of the company and no obligation to pay a fixed minimum amount. There can be no liability under the rationale of *Matter of Zahn*.

A contrary result might impose an unjust burden on the company in contravention of the terms of its contract with decedent. The amount of tax apportionable to the annuity which is claimed to be due from the company is $9,608.70. This is approximately the total of the monthly payments which will be made to the widow during the next fifty-one months. If she were to die at any time prior to the expiration of fifty-one months, upon which event the contractual obligation of the company will terminate, the company then will have paid an amount in excess of its obligation. Whether it could, at that time, recover the excess from this estate, or the widow's estate, the result would be to place upon it an onerous burden over and beyond the terms of its agreement. The same unfairness will eventuate, although to a lesser degree, if the company amortized the amount paid by it in accordance with the usual procedure applicable to common-law annuities. It cannot be assumed that the Legislature intended such a result by enacting " statutory authority for an equitable apportionment of the estate taxes ". (Combined Reports of Decedent Estate Comm. Reprint, p. 339.)

In *Matter of Townsend* (200 Misc. 740), this court directed the insurance company to pay a proportionate amount of taxes from funds held by it pursuant to the terms of a " refund annuity contract " by which the company was obligated to pay a guaranteed minimum amount regardless of the time of death of the annuitant. There the company concededly was in possession of funds and therefore the procedure applicable to common-law annuities was sanctioned.

It is suggested that the court is under a duty to direct the company to reimburse the executor under the familiar rule that in a proceeding pursuant to section 124 the court " is bound by the actual fact of inclusion or exclusion of property by the taxing authorities " (*Matter of Kaufman,* 170 Misc. 436, 445). This rule is premised upon the well-founded belief that this court is without power in such a proceeding to review the action of the taxing authorities (see *Matter of Townsend, supra*), and the objecting party is relegated to his rights, if any, against a delinquent or negligent fiduciary (see *Matter of Chisholm,* 177 Misc. 423, affd. 264 App. Div. 793, affd. 290 N. Y. 842; *Matter of Zahn,* 188 Misc. 864–865, *supra*). Nevertheless, it does not follow as a necessary conclusion that the tax may be apportioned against one not in possession of taxable property. It must be emphasized that the Legislature has made a clear distinction between a person " interested " or " benefited " and one " in possession " of property. The primary liability is that of the former and the amount due may be collected from him personally or from his share in the estate. Collection from a person not interested in the estate, on the other hand, requires as a condition that such person be in possession of property and if such possession is not established as a fact there can be no recovery.

The argument based upon the purported " subrogation " of the executor to the rights of the Government has been considered and rejected by the Court of Appeals and Appellate Division in the *Zahn* case. An insurance company is not a " beneficiary ", " transferee " or " trustee " within subdivision (b) of section 827 of the Internal Revenue Code (U. S. Code, tit. 26) (*John Hancock Mut. Life Ins. Co.* v. *Helvering, supra; Equitable Life Assur. Soc.* case, *supra*), and as the Government possesses no rights against such company for payment of its tax, there can be no subrogation.

Finally, it is suggested that the court's determination might result in an injustice to the creditors and legatees of decedent insofar as the tax attributable to the annuity will have to be paid from the assets of the testamentary estate. There is no intimation that the widow will be unable to pay the amount of tax here in controversy nor is the estate unable to meet its obligations. This very problem was presented in the *Zahn* case where the estate became insolvent as a result of the payment of taxes incurred by the insurance proceeds. Neither the Appellate Division nor the Court of Appeals considered this to be a relevant factor and the Court of Appeals stated (*Matter*

*of Zahn,* 300 N. Y. 11): "There may be good reasons for making the insurance company responsible for the tax. There are equally good, if not more impelling, reasons why such a course would be undesirable. In view of the uncertainty of the amount of the tax until the entire gross estate is ascertained, a lapse of several years could ensue before payment might be made under a policy. The instant case furnishes a good example of the difficulties which might be encountered. Liability should be imposed, if at all, only upon clear and unmistakable statutory language to that effect."

This court has carefully considered the conclusion reached in *Matter of Bissell* (204 Misc. 800) and for the reasons herein stated respectfully disagrees with that portion of the decision concerning the "term annuity" contract.

The claim of the widow for reimbursement for expenditures incurred in connection with the realty devised by paragraph sixth is allowed in the amount requested. Her claim for moneys said to have been expended in connection with decedent's last illness must be proved to and allowed by the Surrogate (Surrogate's Ct. Act, § 212) and the matter is placed upon my calendar for hearing on the 5th day of October, 1953, at 10:00 A.M.