John D. Bennett, J.
Preliminary to deciding the main question before the court on this accounting proceeding, it has been suggested by the guardian ad litem that the court might decide that it is either necessary or desirable to appoint a second guardian ad litem to represent 38 of the 46 infant contingent beneficiaries who are now represented by him. The principal question concerns the apportionment of estate taxes and adjustments of the principal and income arising from certain annuity contracts, life insurance policies and similar nontestamentary assets.
Eight grandchildren, among those so represented, have or may have an interest in a trust created in the will, as well as contingent interests in the said life insurance policies, annuities and other contracts, made by the testator before death, which passed outside the will. Otherwise, all interests are parallel, except that it is said that some may benefit more than others, depending upon the court’s determination of the principal question.
The decree in this accounting proceeding must necessarily rule upon the apportionment of estate taxes and charge them against any available funds or against persons liable therefor. It may also direct the source of payment and the surrender and correction of any certificates heretofore issued (EPTL 2-1.8). The substantive and the procedural questions were long ago (1936) resolved by Surrogate Delehanty in Matter of Scott (158 Misc. *743 481, affd. 249 App. Div. 542, affd. 274 N. Y. 538, cert. den. sub nom. Northwestern Mut. Life Ins. Co. v. Central Hanover Bank & Trust Co., 302 U. S. 721).
The court has carefully examined the relevant instruments which are described below, as well as the other papers and memoranda submitted. It fully appreciates the impact of the questions involved and while the guardian ad litem has reserved his position on the principal question, the court does not deem it either necessary or advisable to appoint a second guardian ad litem under the circumstances shown. The court holds that its jurisdiction is complete to bind all the parties who have been cited, including the 46 infants named in its order of November 24, 1969. The court has jurisdiction of the seven insurance companies who will, incidentally, be protected against any future claims by any person who is a party to this proceeding. In any event, the decree shall contain a provision that this court will retain jurisdiction of the parties in the event that any controversy shall arise as to the respective rights of the parties under the terms of the decree, particularly, as Judge Delehae-ty so aptly phrased it in Matter of Scott (supra, p. 487): “ In the unlikely event of controversy over the recasting of the beneficiaries’ interests the court at the foot of the decree to be entered settling the account will entertain further application by any party deeming himself aggrieved.” (See, also, the last sentence of EPTL 2-1.8). The rights of the infants are therefore well preserved.
The principal question concerns the prayer of the executors for a determination as to the amount of the estate taxes apportionable and charging the insurance companies, ,the beneficiaries, or both. There is no problem regarding estate taxes imposed with respect to property passing under the will which directs that taxes on such property shall be paid from the residuary estate without allocation. Neither is any question raised concerning the authority and duty of this court to apply the rules set forth in EPTL 2-1.8 (formerly Decedent Estate Law, § 124). The nontestamentary instruments examined by the court are described in the instruments themselves as: “ Instalment Settlement Certificate ” (New England Life Insurance Co.); “ Contract ” or “ Agreement ’ ’ of settlement (Connecticut Mutual Life Insurance Company); Retirement Annuity “ Contract ” and “ Claim Settlement Certificate ” (Prudential Insurance Company of America); “ Annuity Certificate ” (National Life Insurance Company); “Settlement Plan” (Connecticut General Life Insurance Company); Amended Retirement Income “Policy” (Massachusetts Mutual Life Insurance Company); *744 and “ Supplementary Contracts ” (Mutual Life Insurance Company of New York).
The court finds no direction either in the will or in the instruments as to apportionment or nonapportionment of these portions of the tax (EPTL 2-1.8, subd. [d]). It appears also that none of the property passing by virtue of those instruments came into the possession of the fiduciaries so they are entitled under EPTL 2-1.8 (subd. [e]) to “recover from the persons benefited or from any person in possession of such property the ratable amounts of the tax and any interest payable by the persons benefited. ’ ’
The testator by the instruments and his arrangements with the insurance companies set up a retirement income plan. At a cost of several hundred thousand dollars he arranged for a monthly retirement income to himself for life and contracted to provide after his death for the income and other proceeds to be paid to his descendants and others, depending upon various contingencies. His son and daughter both survived him, are still living and have regularly received some of the payments due them since his death on December 11, 1963. If they continue to live long enough, under the terms of all the contracts, they shall receive all the amounts due and none of the infants and other contingent beneficiaries will then be entitled to receive any benefits whatever.
Estate taxes in large amounts have been paid by the executors and no one doubts their right to obtain reimbursement, which is but a matter of mathematical calculation, but there is a difference of opinion here. It is urged by the executors that there should be an adjustment and recalculation of the past and the future installment payments, ‘ ‘ reconstituting ’ ’ the contracts as of the date of death. The court agrees, on the principles set forth in Matter of Scott (supra) and Matter of Klauber (22 Misc 2d 879). However, because of the dispute it would be well to explore first the fundamental logic to be applied as set forth by Surrogate Delehanty in his opinion in Matter of Scott (supra, pp. 486-487), and affirmed by our highest court: “ The purchaser of an insurance contract and the insurance company which writes it are each unaware at the date of its execution whether in fact a tax will be imposed upon the rights created under it. * * * There is deemed to be written into each contract, nevertheless, a clause which says in substance that immediately upon the death of the insured there is payable out of the policy proceeds (no matter in what form these are described in the written terms of the policy) the amount of the tax lawfully imposed thereon and that the benefits then accruing *745 under the policy are deemed to be readjusted on an actuarial basis to the amount which would he payable had the policy terms in express words provided for the immediate payment of the death tax by the insurance company.
“ * * * In the case of the policy of insurance which by its terms provides for installment payments the actual contract is for the payment to the sovereign of the tax lawfully imposed upon the property right passing under it and for the payment to the beneficiaries of installments readjusted actuarily so as to impose upon the insurance company no greater burden and to insure to the beneficiaries no greater rights than would have been expressed in the contract had the amount of the tax been known in advance and provision for its payment expressly made.
“ * * * Here the executor has actually paid the tax out of true estate funds. He has by operation of the statute a right of subrogation to the position of the sovereign whose claim he has paid ”. (Emphasis supplied.)
These principles apply in this case and the executors have the right and duty to enforce the right of subrogation under EPTL 2-1.8 for the same reasons quoted above, not only against the insurance companies but also against those beneficiaries who might otherwise receive “ greater rights than would have been expressed in the contract had the amount of the tax been known in advance and provision for its payment expressly made.” (Matter of Scott, supra, p. 487.)
One of the insurance companies (Prudential) disagrees with the above principles and takes the position that the apportioned taxes should be paid by charging them against the “ current balance ” in its possession, by adjusting only future payments and thereby disregarding the date of death. In support of its contention the company lays great stress on Matter of Zahn (300 N. Y. 1, affg. 273 App. Div. 476) which reversed a decision by Surrogate Delehaitty reported at 188 Misc. 856). Prudential ’s counsel also call attention in support of their argument to two decrees signed by Surrogate Di Falco in New York County —Matter of Korn (File No. 690/66, March 5, 1970) and Matter of Foote (File No. P. 503/65, May 19, 1970).
The court finds that Matter of Zahn (supra) is not applicable since there all of the insurance proceeds had been duly paid out by the insurance company to the beneficiary who had squandered them and there was left in the company’s possession neither a fund nor an unpaid liability. The Court of Appeals expressly distinguished Matter of Scott (supra) and did not overrule it. Here, in the case of Prudential, there was and still is admittedly a “ balance ” left to be paid under its agreement *746 with the decedent (claim settlement certificate dated March 26, 1963).
The decrees and decision by Surrogate Di Falco are not at variance with the determination to be made herein. His decree in the Korn matter apportioned the taxes paid as between the insurance beneficiary and the insurance companies and directed the beneficiary and any contingent beneficiary to return the claim settlement certificates to the company for “ appropriate endorsement to reflect the payment of the estate taxes. ’ ’ In the Foote matter, the decree provided for reimbursement to the executors by the beneficiary as well as by the insurance company where part of the proceeds of the policies had been paid to the beneficiary. That decision of Surrogate Di Falco is consistent with the decision now reached by this court since his memorandum opinion stated: ‘ ‘ Such contribution shall be made from the reserves of the policies held by two of the companies and from the monthly payment’ heretofore made to the beneficiaries of the policies issued by the other two companies and from the proceeds still retained by them.” (Emphasis supplied.) Matter of Bissell (283 App. Div. 624), also cited by Prudential, has no application here since the contract in that case did not provide for a specified number of monthly payments or any minimum total amount.
Summarizing the position of Prudential, the court finds that its position is no different from that of the other companies. Long before the death of the decedent, and on March 26, 1940, he made a contract with Prudential, amended by the claim settlement certificate dated March 26, 1963, by providing for 360 monthly “ installments ” of $509.72 each, to be paid to him for his lifetime and then to his children and other contingent beneficiaries, calculated on the basis of a settlement of $129,699.58. It provided also for “ interest dividends.” There were admittedly to become due after the decedent’s death 351 of those installments. Prudential says the cash value of the claim settlement certificate on the date of death was $128,535.55 and the cash value discounted of the remaining payments was $127,-409.61, with no allowance or deduction for estate taxes of $44,948.23 (as apportioned by the executors).
Sixty monthly payments in the amount agreed upon (possibly with dividends) were paid after the decedent’s death to the son and daughter, leaving 291 still to be made. Prudential now suggests that instead of reconstituting the claim settlement certificate back to December 11, 1963, the date of death, and recalculating the proper installment amounts after taxes, the correct ruling would be to direct Prudential to pay all of the *747 apportioned estate taxes out of the presently held balance, which would then be reduced accordingly, and so would future monthly payments be reduced. The past payments to the son and daughter, however, would not be affected.
The court does not believe that this would be proper or equitable, according to the principles enunciated in Matter of Scott (supra). It would unjustly enrich the son or- daughter in the event that one of them should die before the payments are completed, and such enrichment would be totally at the expense of the contingent beneficiaries. Therefore, consistently with actuarial accounting practices and equitable adjustments, the determination of the court is that the son and daughter should not be permitted to retain whatever excess there was in the payments to them, but they will be directed to pay such excess amounts to the executors to be applied towards the apportioned taxes. Any balance due to make up the apportionment of taxes on this asset should be paid by Prudential to the executors. The parties will be directed by the decree to amend the claim settlement certificate of Prudential and also the instruments of the other companies so as to provide for such reconstitution and equitable reduction in the installment payments. There appears to be no reason why calculations on this basis cannot be made and the figures agreed upon by the parties or submitted for a hearing if they cannot agree.
There is no need for the guardian ad litem to submit a detailed report regarding the apportionment of taxes unless he disagrees with the calculations and figures already submitted or to be submitted in accordance with this decision. However, if the account is supplemented to bring it down to date from May 31,1968, the guardian ad litem will be expected to comment further thereon.
The effect of this decision will be to require the son and daughter to pay back a portion of the sums already received by them and, conversely, all 46 contingent beneficiaries will have greater expectations. This decision traces the determinations made in Matter of Scott (supra), and Matter of Klauber (supra) as well as others not cited here. None of the insurance companies now before this court, including Prudential, have shown to the court any fact which would distinguish its particular contract or instrument from any other insofar as this question is concerned.
Unless a party to these proceedings wishes a hearing as noted above, or disagrees with the actuarial figures submitted or to be submitted by the insurance companies, it appears that this accounting proceeding may be ready for decree. Therefore, unless a motion is served on the parties who have appeared on or before August 26, 1970, the accountants should proceed to *748 bring the account down to date, if they are so advised, and then to settle the decree on five days’ notice, with three additional days if service is made by mail.