In the Matter of the Judicial Settlement of the Account of Proceedings of CENTRAL HANOVER BANK AND TRUST COMPANY, as Executor of, and as Trustee under, the Last Will and Testament of FRANK L. SCOTT, Deceased.*

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, Appellant; CENTRAL HANOVER BANK AND TRUST COMPANY, as Executor of, and as Trustee under, the Last Will and Testament of FRANK L. SCOTT, Deceased, and Others, Respondents.

First Department, January 29, 1937.

* Affg. 158 Misc. 481

*Isaac M. Barnett* of counsel [*Roy Plaut* with him on the brief; *Barnett, Plaut & Schweitzer*, attorneys], for the appellant.

*Samuel A. Pleasants* [*Pleasants & Myron*, attorneys], for the respondent Central Hanover Bank and Trust Company, as executor and trustee, etc.

*John P. O'Brien*, as special guardian for the infants respondents David Sherwood, Mary Anne Wollaston and Mary Anne Foster Scott.

*William R. Conklin* of counsel [*Conklin & Bentley*, attorneys], for Bankers Trust Company, Jessie Campbell and George F. Campbell, as executors, etc., of William B. Campbell, deceased, as *amici curiæ*.

MARTIN, P. J.  The facts are adequately set forth in the opinion of Mr. Justice DORE.  We agree that there is solely a question of law presented on this appeal and that the issue is a narrow one.

We cannot agree, however, with the conclusion that the insurance company is not in possession of property transmitted at death.

The obligations of the insurance company were:

1. To pay to the assured the cash surrender value;

2. To pay to the executor or administrator of the decedent the face amount of the policy and accumulations in the event that the decedent so designated;

3. In the event that the decedent failed during his lifetime to make any change of beneficiary, to retain the net proceeds, after deductions, and pay the same to the beneficiaries designated in the instruments of July 31, 1931, in the manner therein set forth.

Any right of the beneficiary remained inchoate until the death of the decedent. Prior to the death of the decedent the relationship existing between the insurance company and decedent was that of insurer and insured. Upon his death the company received the proceeds and the relationship between it and the beneficiaries became that of debtor and creditor. His death first gave the insurance company the right to postpone payment of the net balance of the proceeds. The answer of the insurance company to the petition herein recites: " That pursuant to the provisions of said policies, the proceeds of said policies upon decedent's death remained with this objectant subject to the provisions of the aforesaid policies, creating between this objectant and the various beneficiaries of said policies the relationship of debtor and creditor."

The exhibits annexed to the answer to the petition, which are copies of change of beneficiary executed by the decedent some. five months prior to his death, indicate that the form of settlement was changed. The language used is significant. The insured directs that " settlement of the full aggregate proceeds of said policies, collectively, shall be made  *  *  * in monthly instalments, payable in advance, beginning one month after the policies become payable." Exhibit 1 gives the son of the insured the privilege of surrender and withdrawal, not to exceed $5,000 of his share, after attaining the age of thirty years, and not to exceed $5,000 after attaining the age of thirty-five years. The daughters have the privilege, after attaining the age of forty years, of changing the method of payment of their respective shares, and it is provided that " the lawful surviving child or children, if any, of Walter L., Helen N. and Mary A. Scott and Virginia M. Sherwood shall receive in one sum such share or shares of the principal amount retained by the company."

Exhibit 3 directs: " Upon the death of the last survivor of myself, Anne M. L. and Mary B. Scott, any proceeds then in the company's hands on account of said policies shall be commuted and

payable in one sum." Attention is directed to the expressions, " withdrawal," " principal amount retained," " proceeds then in the company's hands." These expressions indicate a conception of something more than " obligations " on the part of the insurance company.

In *Crossman Co.* v. *Rauch* (263 N. Y. 264) the Court of Appeals had before it a policy of life insurance providing for payment of monthly installments to the named beneficiary. The question before the Court of Appeals was the right of a judgment creditor to reach the monthly installments by garnishee execution. That question, of course, is of no import here, but what is of interest is the discussion by the court of the procedure followed by the insurance company as a result of the insurance contract. There the husband of the judgment debtor-appellant procured an insurance policy upon his life for $50,000, payable after his death to his widow, the appellant, in 240 monthly installments, each of $6.25 per $1,000 of the proceeds of the policy, equivalent to $312.50 per month. Attached to and made a part of the policy was an agreement which reads, in part: " It is agreed that The Travelers Insurance Company, Hartford, Connecticut, shall receive such proceeds of the above contract as the Beneficiary hereinabove named shall become entitled to, if not less than One Thousand Dollars, and in consideration thereof shall pay at the Home Office of the Company at Hartford, Connecticut, to the said Beneficiary the instalments hereinabove set forth."

The Court of Appeals said:

" It seems clear to us that the transfer by the insured to the insurance company of the proceeds of the policy, under an agreement obligating the company to pay to the beneficiary $312.50 in monthly instalments for 240 months, constituted a transfer of not only the face value of the policy, $50,000, but also all interest and income that might accrue thereon and that the provision of the agreement that ' the proceeds received in trust by the company are not transferable, subject to encumbrance, nor to legal process ' includes accruing interest and income as well as principal.

" Under the agreement, the company was to receive the face value of the policy and the right to the income thereon and the beneficiary after the death of the insured was to receive the specified 240 monthly payments of $312.50 each. She never was to become entitled to the face value of the policy as an entity. The agreement of the company to make the monthly payments and the payment thereof was to constitute as to her the proceeds of the policy and the proceeds, under the wording of the agreement and the provisions of the statute, were to be exempt from legal process, except in an action to recover for necessaries.

" The transfer of the proceeds of the policy constituted a transfer of the ' benefits accruing thereunder ' and ' the parties to the trust or other agreement so agree ' by necessary implication.

" Within the meaning of the agreement the transfer of the ' proceeds ' constituted a transfer of the interest earned by the investment of such proceeds, as an incident of the transfer."

In Richards on the Law of Insurance (4th ed. § 385) it is said: " The optional methods of settlement contained in life insurance policies have for their objective the conservation and distribution of principal and income. The insurance company regards the face amount of the policies as part of its general funds and, at the time the claim matures, it is paid or the proceeds invested as the case may be. If invested, it is not segregated and is in no sense earmarked. The company makes the payment under the terms of the contract and not as a trustee. The relation between the beneficiary and the company is that of debtor and creditor. The principal sum and a portion of the income are guaranteed. Mutual companies customarily allow an amount of income in excess of the guaranteed rate depending on the rate of dividends paid, the increased payments varying within narrow limits. Behind these deferred settlements are all of the net assets of the insurance company. The options, being contractual, are not flexible and do not allow discretionary payments to meet changed circumstances or emergency needs of the beneficiary. The company's liability ceases once the income check is delivered to the beneficiary.'

The Personal Property Law (§ 15) makes provision for the exemption of installment benefits under a policy of life insurance. The language of that section applicable to such benefits is as follows: " Provided, however, that when the proceeds of a life insurance policy, becoming a claim by death of the insured, are left with the insurance company under a trust or other agreement, the benefits accruing thereunder after the death of the insured shall not be transferable, nor subject to commutation or incumbrance, nor to legal process except in an action to recover for necessaries, if the parties to the trust or other agreement so agree."

All of these authorities indicate that upon the death of the insured there is a transfer to the insurance company of property, the proceeds of the policy, and, while this transfer may be simply a matter of bookkeeping involving no segregation of specific funds, there is a sufficient change to justify the application of the provisions of section 124 of the Decedent Estate Law.

The decree directs the insurance company to pay to the executor the amount of the tax paid. This is not a direction to accelerate contractual obligations. The obligation of the insurance company

is to pay to the beneficiary monthly so much for each $1,000 of the net proceeds. The total to be paid to the beneficiary depends upon the amount received by the insurance company.

The decree of the surrogate, so far as appealed from, should be affirmed, with costs.

TOWNLEY and GLENNON, JJ., concur; UNTERMYER and DORE, JJ., dissent and vote for modification as indicated in dissenting opinion of DORE, J.

DORE, J. (dissenting). The decedent died December 11, 1931, and accordingly the death duties imposed on the transfer of his net estate were subject to the provisions of article 10-C of the Tax Law which require the tax to be paid in the first instance by the executor who thereupon is obligated to charge the same against and collect it from the persons interested in the estate in order that it shall be proportionately borne by those who have received the benefit. (Tax Law, § 249-n.)

During decedent's life, The Northwestern Mutual Life Insurance Company of Milwaukee, Wisconsin (hereinafter referred to as Northwestern), issued to the decedent thirteen policies of life insurance in the aggregate amount of $100,000, on which at the date of his death $18,511 in dividends had accrued and upon which there was a post mortem dividend of $1,657.64, making a total amount payable of $120,168.64. Under the terms of the policies the right to change the beneficiary was reserved to the assured during his life. On his death the proceeds of the policies were payable to designated beneficiaries under the provisions of certain options of settlement contained in the policies; eleven of the thirteen policies in question are being paid to such beneficiaries in stated installments under what is called the option A settlement, which provides in effect for periodic payments during the lifetime of the beneficiary with remainder interests over; the proceeds of the other two policies are being paid in stated installments in accordance with the terms of what is known as option C settlement, which provides in effect a life annuity for the beneficiary.

Northwestern has not segregated any funds for the payment of the proceeds of these policies, but such payments have been made and are to be made out of the insurance company's general funds.

In addition to insurance, the decedent left a net taxable estate of $175,773.14. The insurance moneys never came into the possession of the executor, but out of the general assets of what is called the true estate the executor under the terms of the Tax Law was compelled to and did pay Federal and State taxes imposed on the net estate of the decedent and such taxes included the sum of

$1,873.17 apportioned to the proceeds of the said Northwestern policies. In its accounting the executor applied for an order under the provisions of section 124 of the Decedent Estate Law directing Northwestern to pay the executor the said sum. Northwestern opposed the application on various grounds, and the learned surrogate, overruling its contentions, directed Northwestern to pay and deliver to the executor the said taxes in the sum of $1,873.17.

The facts having been stipulated, a question solely of law is presented on this appeal, and that in effect is whether the insurance company under the provisions of section 124 can be compelled forthwith to reimburse the executor for the entire tax apportioned to the proceeds of the insurance policies though such payment results in the acceleration of presently unmatured obligations of the company.

The issue of law thus presented is a narrow one and its precise limitations must be kept in mind. The right of the State or Federal government to impose death levies on the proceeds of insurance policies of this nature is not questioned; nor can it successfully be contended that section 10 of article I of the Constitution of the United States, forbidding State laws impairing the obligations of contracts, bars immediate collection from the executor of the tax imposed by the State of New York upon whatever property rights have been transferred at death under these insurance contracts; nor would the mere lack of a segregated fund in the hands of the insurance company bar collection of such tax. In our opinion, however, in holding that, for reasons of convenience and certainty of collection, the payment should be required to be made to the executor by the insurance company in the first instance out of its general assets before its obligations to the beneficiaries are matured (leaving to the company to make the necessary adjustments with the beneficiaries), the learned court committed error which requires the reversal of the decree to the extent hereinafter indicated.

Section 124 of the Decedent Estate Law relates to the apportionment of Federal and State taxes, and so far as relevant provides that when an executor has paid a death tax on property required to be included in the gross estate, the amount of the tax so paid, unless the testator otherwise directs in his will, " shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues," and that such prorating shall be made " in the proportion as near as may be, that the value of the property * * * of each such person bears to the total value of the property * * * received by all such persons interested in the estate." Then follow provisions for the allowance of exemptions and other provisions not here

relevant. After providing that unless otherwise directed by the will the executor shall pay the taxes, the section further provides that in all cases in which any property required to be included in the gross estate does not come into the possession of the executor as such " he shall be entitled, and it shall be his duty, to recover from whomever [thus in the original] is in possession, or from the persons interested in the estate, the proportionate amount of such tax payable by the persons interested in the estate with which such persons * * *. are chargeable under the provisions of this section, and the surrogate may by order direct the payment of such amount of tax by such persons to the executor."

The term " persons interested in the estate " is defined in the act to have the same meaning as is given such term in section 249-m of the Tax Law; and that definition is " all persons who may be entitled to receive or who have received any property or interest which is required to be included in the gross estate of a decedent, or any benefit whatsoever with respect to any such property or interest " whether under a will or intestacy or other transfer enumerated in section 249-r.

Under these relevant provisions of section 124, therefore, the executor can demand collection only from two classes of persons: from such persons as are " in possession " of the property, or from " persons interested in the estate." Concededly Northwestern is not a person interested in the estate, as defined in section 249-m. Nor in our opinion is it " in possession " of estate property and, accordingly, under the provisions of section 124 may not be compelled to pay the tax.

This conclusion follows both from the purpose and basic principle of the Estate Tax Law in general, as well as from the purpose and the language of section 124 in particular. The fundamental doctrine on which the whole structure of the Estate Tax Law reposes is the right of the sovereign to exact a tax for the privilege of transmitting property at death. Hence, as such act of transmission is the object of the levy, the tax is properly exacted in the first instance from the personal representatives of the deceased. Where, however, as in this case, the property consists of the proceeds of insurance policies payable to specified beneficiaries and not to the estate and accordingly has not come into the possession of the executor, the entire burden of the estate tax on such property, but for section 124, would fall on the residuary legatees who in most instances are the nearer and more dependent relatives of the deceased and who would be compelled to pay the tax although they might receive none of the benefits of the insurance. As is indicated in the report of the Commission that proposed section 124, that section was drawn

to provide statutory authority for an equitable apportionment of estate taxes both Federal and State as against all transfers of property included in the gross estate. To avoid the inequity above referred to, the new section provided that the surrogate, after the executor had paid the tax from general estate assets, may direct the payment of the amount of the tax in question from persons " in possession " of the property or persons " interested in the estate."

A person to be " in possession " of property transmitted to him at death, must in some manner have received the property at death from the decedent. Whatever the testator had paid to Northwestern was paid by him as premiums during his lifetime. Nothing was paid at or after his death. As a consequence of due and prompt payment of the premiums during his life under the terms of the policies, two things happened at decedent's death: (1) Property rights for the payment of designated sums at stated times under the terms of the policies were transmitted to the respective beneficiaries named in the policies; and (2) the obligation of Northwestern to pay such sums at such times became fixed and irrevocable. No estate property whatever was transmitted to or then came into possession of Northwestern; its assets were not increased in the least; on the contrary, its contractual obligations to pay at the times and amounts specified then began.

About five months prior to his death, the decedent exercised the right to change beneficiaries, expressly reserving to himself the right to revoke or again to change the beneficiaries. Respondent urges that the obligation of Northwestern at the instant before decedent's death, was, if the assured so elected, to make immediate payment on his death and it was only by his voluntary act in not revoking and demanding such immediate payment that any right of postponement arose. But the right of the decedent to effect changes in the policies is important only because it is the existence of this right which renders the proceeds of the policies subject to estate taxation at all. What the decedent *could* have done but did not do at any time before death is immaterial on the issue before the court. The point is that having failed to revoke or to change the beneficiaries there was transferred to the named beneficiaries at the decedent's death under the contractual provisions of the policies the right to receive the stated installments at the stated times. That right was a property right transmitted *to the beneficiaries* whose rights were irrevocably fixed at the instant of death. In no proper sense, either in fact or in law, can Northwestern be said to have then come into " possession " of property of the estate.

Conceding that the group of rights that constitute the Northwestern's insurance contracts is property, it should be noted that

the property consists solely of rights to enforce Northwestern's contractual obligations to pay when the times specified for payment arrive. Upon the arrival of such time, the right becomes an indebtedness as to the amount then payable; as to the balance to be paid in the future, Northwestern remains a contractual obligor. The one who is in possession of the rights and consequently of the property transmitted is the beneficiary who is entitled to enforce the obligation, not Northwestern, which is obligated.

The conclusion cannot be avoided that the construction given to the statute by the learned surrogate gives the executor a right against the insurance company to accelerate its contractual obligations. The ruling below requires Northwestern at the date of the decree to pay the executor moneys out of its general assets although such moneys are not presently due under its contracts with decedent. Such construction is neither necessary nor proper. In the *Sinking Fund Cases* (99 U. S. 700) the court considered the question of the validity of a statute which compelled the Union Pacific railroad to create and maintain a sinking fund and in holding the statute valid clearly indicated that the requirement of the sinking fund could not be considered as forcing payment of the obligation of the bonds before they matured. The court said: " The United States occupy towards this corporation a two-fold relation — that of sovereign and that of creditor. * * * Their rights as sovereign are not crippled because they are creditors, and their privileges as creditors are not enlarged by the charter because of their sovereignty. They cannot, as creditors, demand payment of what is due them before the time limited by the contract. Neither can they, as sovereign or creditors, require the company to pay the other debts it owes before they mature."

Among the numerous authorities cited by the respondent and by the learned court in its opinion, no case is cited sustaining the right of a legislative body to accelerate obligations under a contract solely for the purpose of expediting the collection of a tax especially where, as here, such acceleration, even if constitutional, is not necessary for certainty and facility either in collecting the tax or reimbursing the executor for the payment of the same. As we construe the act, the Legislature has not attempted to exercise the power claimed.

Respondent contends that the construction adopted by the surrogate is necessary to insure certainty and celerity in collecting the tax. But it is to be noted that section 124 is not a revenue statute; it does not impose any tax or provide any method by which the *State* may collect the tax; it deals only with equitably prorating taxes already paid by the executor and with the reimbursement of the executor for such taxes. The taxing statutes make the tax a

lien on the proceeds of the insurance. (Tax Law, §§ 249-n, 249-bb, 249-r, subd. 9; Federal Revenue Act of 1926 [44 U. S. Stat. at Large, 80], § 315; U. S. Code. tit. 26, § 427, subds. [a], [b].) Certainty and facility in the collection of the tax or reimbursement of the executor and the attainment of the equitable purpose of section 124 that those who receive the benefit should pay therefor proportionately, can be achieved in other ways. In an appropriate case the decree could provide that the insurance company pay to the executor the various installments under the several policies in question as and when they accrue until such payments in each case constitute full reimbursement to the estate for the taxes apportioned to the proceeds of such insurance policies, in so far as such taxes have been paid by the executor out of the general funds of the estate. Thus the tax would be paid and the executor reimbursed without accelerating the insurance company's contractual obligations. If, in certain exceptional cases, this method would unduly prolong the administration of the estate, the executor could be reimbursed by directing the beneficiaries as persons in possession as well as persons interested in the estate to pay the proportionate share of the taxes allocated against the benefits which these very beneficiaries have themselves received. In still other cases where the beneficiaries receive substantial amounts from the residuary estate reimbursement could be made from the beneficiaries' share in the residue, as such procedure would be in fulfillment and not in contravention of the purpose of section 124.

The Legislature under section 124 did not intend to afford the executor the right to compel the insurance company to pay out of its general assets the taxes apportioned to the proceeds of the policies in such manner as to accelerate its contractual obligations, as the company is neither " in possession " of estate property nor a " person interested in the estate." This conclusion renders it unnecessary to consider the several contentions made by Northwestern that section 124 is unconstitutional, the established rule being that a constitutional question is judicially entertained only when its determination is unavoidable for the determination of the particular case. (*Hanrahan* v. *Terminal Station Commission*, 206 N. Y. 494.)

Accordingly I dissent and vote to modify the decree of the surrogate as hereinabove indicated, with costs to the appellant, and the matter remitted to the Surrogate's Court for further proceedings in accordance with this opinion.

UNTERMYER, J., concurs.

Decree, so far as appealed from affirmed, with costs. Settle order on notice.