In the Matter of the Accounting of JANET B. DIMOND, as Executrix of EMILY W. BISSELL, Deceased, Respondent. MUTUAL BENEFIT LIFE INSURANCE COMPANY, Appellant; THOMAS J. McNAMEE, as Special Guardian, et al., Respondents.

First Department, April 20, 1954.

*A. Amasa Miller* of counsel (*Littlefield, Miller & Cleaves,* attorneys), for appellant.

*Henry N. Ess, III,* of counsel (*Langdon M. Day* with him on the brief; *Sullivan & Cromwell,* attorneys), for executrix, respondent.

*Thomas J. McNamee,* as special guardian, respondent in person.

*John V. Bloys* (*Henry R. Glenn* with him on the brief), for Life Insurance Association of America, *amicus curiæ.*

BASTOW, J.  Presented upon this appeal is the issue as to the liability of a life insurance company for the amount of estate tax apportioned under section 124 of the Decedent Estate Law to the value of an annuity contract issued by the company.

On March 5, 1937, the decedent purchased from the appellant, the Mutual Benefit Life Insurance Company, a single premium annuity contract.  The company received $20,000 from the decedent and issued a contract by the terms of which it agreed to pay a monthly annuity of $103.60 to the decedent during the joint lives of the decedent and her daughter, Janet B. Dimond. The company further agreed that after decedent's death the monthly payments were to be made to the daughter until the maturity of the contract on March 5, 1957, or the prior death of the daughter.  The contract does not provide for the payment of any minimum total amount, or of any minimum number of monthly payments, nor does it provide for any surrender or terminal value.  In other words, upon the death of the decedent the sole obligation of the company was to make each monthly payment as it fell due, provided the annuitant was alive on such due date, until March 5, 1957.

The decedent died in November, 1945, leaving, among other heirs, her daughter, who is the annuitant and the executrix of the decedent's will.  On September 14, 1953, a decree was made settling the intermediate account of the executrix.  The decree, among other things, directed the appellant to pay the executrix the sum of $1,525.15 as the proportionate amount of Federal and New York estate taxes previously paid by the executrix and allocated to the value of the annuity contract.  During the years from the death of decedent in 1945 until the making of the decree in 1953, the appellant had paid the annuitant in monthly installments pursuant to the provisions of the contract, a total of $9,738.40.

Section 124 of the Decedent Estate Law provided in part that '' Whenever it appears upon any accounting  *  *  *  that an executor  *  *  *  has paid a death tax  *  *  *  upon or with respect to any property required to be included in the gross estate of a decedent  *  *  *  the amount of the tax so paid  *  *  *  shall be equitably prorated among the persons

interested in the estate to whom such property is or may be transferred or to whom any benefit accrues. * * * In all cases in which any property required to be included in the gross estate does not come into the possession of the executor as such, he shall be entitled, and it shall be his duty, to recover from whomever is in possession, or from the persons interested in the estate, the proportionate amount of such tax " (L. 1940, ch. 829).

The appellant contends that it is not " in possession " of property required to be included in the decedent's taxable estate. It points out that the annuity contract has no terminal or surrender value and no proceeds except the successive monthly payments as they become due and the obligation to pay which is conditioned upon the survival of the annuitant on the monthly due date. While the company is presently recouping the amount of the assessed tax by deductions from the monthly payments to the annuitant, it is undisputed that in the event of the death of the annuitant prior to 1957, no fund will exist from which the balance of the tax directed to be paid under the terms of the decree may be recovered.

The court below based its determination upon *Matter of Scott* (158 Misc. 481). There it appeared the decedent owned policies of life insurance maturing at the death of the insured. The proceeds of these policies were payable to named beneficiaries in stated installments. The court had for consideration certain fixed sums in the possession of the company. The Surrogate directed the companies to pay to the executor the amount of the apportioned tax upon the policies. The opinion of the lower court invoked what has been described as the " toll theory ". This theory as formulated by the Surrogate was to the effect that contracts effective at death and creating or transferring property rights at death must be deemed to have written into them a term which preserves the State's tax right. An insurance contract — no matter in what form prepared by the parties — must be deemed to establish a fund having immediate value and the sovereign has the right to exact from that fund whatever tax it lawfully imposed. To implement this theory insurance contracts are deemed to include a clause providing that the amount of tax levied thereon is immediately payable from the proceeds and that the beneficiary succeeds only to the amount in excess of the government's " toll ".

When the *Scott* case reached this court, however, the " toll theory ", at least by implication, was rejected (*Matter of Scott,*

249 App. Div. 542). While we affirmed the decree of the Surrogate directing that the insurance company pay to the executor out of the corpus of the insurance policies the amount of the estate taxes apportioned against the interests of the respective beneficiaries, we did so not upon the toll theory but upon a finding that upon the death of the insured the company received the proceeds of the policies and the relationship between it and the beneficiaries became that of debtor and creditor. It was stated " that upon the death of the insured there is a transfer to the insurance company of property, the proceeds of the policy, and, while this transfer may be simply a matter of bookkeeping involving no segregation of specific funds, there is a sufficient change to justify the application of the provisions of section 124 of the Decedent Estate Law ". (249 App. Div. 546.) The Court of Appeals affirmed without opinion (274 N. Y. 538, certiorari denied *sub nom. Northwestern Mut. Life Ins. Co. v. Central Hanover Bank & Trust Co.,* 302 U. S. 721).

The full import and impact of the toll theory became apparent when it was again applied in *Matter of Zahn* (188 Misc. 856). There it appeared that the insured died in May, 1937. The policy in question provided for payment of the proceeds to the wife of the insured upon his death. Such payment was made in full within two months after the death of the insured. Thereafter, the beneficiary died and no recovery of estate taxes allocated to the policy could be made out of the proceeds of the policy since they had been wholly spent before her death. The Surrogate relying upon his decision in the *Scott* case, directed the insurance company to pay to the executors the amount of the estate taxes allocated to the policy. The Surrogate wrote " that the tax due the sovereign on the devolution of property is exacted as a toll and that *only the balance* passes to the beneficiary " (188 Misc. 856, 860).

When the case reached this court we reversed (*Matter of Zahn,* 273 App. Div. 476), and the Court of Appeals affirmed (300 N. Y. 1). In the latter opinion the court said that under the facts presented the insurance company was neither one in possession of the property nor a person interested in the estate within the meaning of section 124 of the Decedent Estate Law. The court in effect rejected the toll theory in the following language (pp. 9–10): "According to the Surrogate, Equitable might be deemed still in possession on the theory that the proceeds were segregated into two separate funds at the moment of insured's death (one for the payment of the tax,

the other for the beneficiary) and Equitable failed to pay over to the proper party the fund segregated for payment of taxes. Under the Surrogate's theory, the insurance company becomes in effect a withholding agent for the taxing authorities. Section 124 is an apportionment statute, not a taxing statute; collection by the executor or administrator is authorized merely to insure that apportionment will be accomplished. Alternative categories are described to insure prompt and equitable reimbursement of the executors. If the ' person interested in the estate ' is not in possession of the property, the statute authorizes collection from ' whomever is in possession '. The period for determining ' possession ' is at the time when the executor seeks reimbursement. In *Matter of Scott* (249 App. Div. 542, affd. 274 N. Y. 538) we affirmed the holding of the Appellate Division that an insurance company could be held liable for the proportionate share of the tax attributable to proceeds of insurance policies held *on deposit* by it. It was there thought that a sufficient change in the nature of the holding had taken place to justify an assertion that the insurance company was ' in possession ' of the property though the funds had not been segregated from the general funds of the company. That case did not hold, however, that the funds on deposit with the company had been segregated so as to reserve a portion for taxes and the remainder for the beneficiaries.''

Upon the facts here presented, the appellant is not a '' person interested in the estate '' within the meaning of section 124. If an apportioned estate tax is to be collected from an insurance company, it must be based upon a finding that the company has received and is holding a fund which must be paid out in any event. Thereupon, the amount of the tax may be recovered by the executor because the company is in possession of the fund against which the tax has been assessed.

Here, no sum of money became due and payable upon the decedent's death. The obligation of the company was to make future monthly annuity payments conditioned upon the survival of the annuitant as of the date of the monthly payments. The company was not '' in possession '' of any fund, nor does one exist from which the tax can be paid, for nothing may be payable in the future.

The result of the decree made herein is to compel the company to pay the full amount of the tax apportioned against the annuity contract and assume the risk that the annuitant will live until the expiration of the contract at which time the com-

pany will have recouped the amount of the tax paid. The incongruity of the contention of the executrix is accentuated by the fact that she in her individual capacity as annuitant has received since the death of the decedent monthly payments under the provisions of the contract totaling $9,738.40.

We conclude that the appellant was not in possession of any property from which the apportioned tax may be recovered by the executrix. A joint and survivor annuity contract is comparable to a policy providing for payment of a fixed sum upon the death of the insured to the extent that both provide for prompt payment of cash to the annuitant or beneficiary. The conclusion of the court in *Matter of Zahn* (300 N. Y. 1, 11, *supra*) is applicable to the facts in this case. It was said: " There may be good reasons for making the insurance company responsible for the tax. There are equally good, if not more impelling, reasons why such a course would be undesirable. In view of the uncertainty of the amount of the tax until the entire gross estate is ascertained, a lapse of several years could ensue before payment might be made under a policy. The instant case furnishes a good example of the difficulties which might be encountered. Liability should be imposed, if at all, only upon clear and unmistakable statutory language to that effect."

The decree, insofar as appealed from, should be reversed, without costs, and the matter remitted to Surrogate's Court for further action in accordance with this opinion.

Dore, J. P., Callahan, Breitel and Botein, JJ., concur.

Decree, so far as appealed from, unanimously reversed, and the proceeding remitted to the Surrogate of the County of New York for further action in accordance with the opinion of this court.