Joseph A. Cox, S.
The executors in this proceeding to settle their account have requested approval of the apportionment and allocation of estate taxes paid by them as shown in Schedule I of their account. The widow, who, by virtue of an antenuptial agreement and an agreement entered into between the decedent and his employers has received and will continue to receive certain fixed monthly payments, objects to the allocation or apportionment of any of the estate taxes against the moneys being received by her. The matter has been submitted on an *308 agreed statement of facts which stated as briefly as possible are as follows: On December 8, 1947, three days prior to the scheduled marriage of the objectant widow and the decedent, the decedent and his prospective bride, who will hereafter be referred to as the widow, entered into an antenuptial agreement. Under the terms of the agreement each of the parties mutually waived their rights in each other’s estates including their rights of election. As additional consideration for the widow’s waiver the decedent agreed that if the widow survived him as his lawful widow she would be entitled to receive the rights, benefits and payments which might be due her as his widow pursuant to the terms of an agreement entered into between the decedent and his employers, Salant & Salant, Incorporated, on May 3, 1946. Prior to and at the time of the execution of the antenuptial agreement, the decedent stated to both the widow and his attorney that if the widow married him and survived him she would be amply provided for by reason of the agreement made by the decedent with his employers and that she would be entitled to receive all the benefits and payments provided for under the arrangements made between the decedent and his employers. On the date of the execution of the ante-nuptial agreement the property owned by the decedent included life insurance policies payable to his estate in the sum of $115,000 which sum if it had remained payable to his estate would have created a residuary estate sufficient to pay all Federal and New York estate taxes, including the taxes which might be assessed on the benefits payable to the widow under the provisions of the agreement between the decedent and his employers. The decedent and his wife were married on December 11, 1947 and they continued to reside together as husband and wife until October 30, 1953 when the decedent died.
In March, 1949 the decedent removed his estate as the beneficiary of his life insurance policies and named his daughter Edith as the beneficiary thereof under selected options. As a result there is not enough money in the estate to set up the trust of $225,000 created by paragraph Fifth of the decedent’s will and no money in the residuary estate out of which taxes can be paid.
The decedent’s will which has been admitted to probate was executed on January 5,1947 prior to the date of the antenuptial agreement and was never changed prior to his death. The agreement entered into between the decedent and his employers on October 3, 1946 was superseded by another agreement entered into between them on December 10, 1948 which extended his term of employment to 1955 but remains unchanged with respect *309 to the benefits for the widow and is the contract under which she is now receiving payments. On September 15,1952 another contract was entered into between the decedent and his employers which supplemented the prior agreements and provided for additional payments of $15,000 per year to the widow for a period of five years after the decedent’s death. The widow has received these payments and they were included in the taxable estate but no question of tax allocation arises because the taxing authorities allowed a full marital deduction to the widow on the commuted value of these payments fixed for tax purposes. Under the terms of the contract entered into between the decedent and his employers on December 10, 1948 the employers agreed to pay a total sum of $192,000 over a period of 20 years to the beneficiaries named therein by the decedent. The payments were to be made in monthly installments of $1,000 each for a period of 12 years and $500 each for a period of 8 years. The beneficiaries, named in their order, were as follows: To Catherine M. Lipshie, his widow, until her death within said period, thereafter to his daughter Edith until her death within said period, thereafter to his grandson Edward until his death within that period and thereafter the balance, if any, remaining unpaid, to the Federation of Jewish Philanthropies of New York. Up to the time this proceeding was instituted the widow had received $79,000, and Salant & Salant, Incorporated, are liable under the contract for a balance of $113,000, although no specific fund or assets have been set aside by the company to provide for its payment.
The agreed statement of facts further states that the value of the payments being received by the widow was fixed for tax purposes at $145,351.94 and that against that amount there was allowed a marital deduction of $40,036.35 by the Federal estate taxing authorities. As a result Federal and New York estate taxes in the sum of $29,273.20 have been assessed against the benefits received and to be received by the widow under the contract between the decedent and his employers, and the executors have paid such taxes.
There are additional items contained in the agreed statement of facts which the court does not consider pertinent to the discussion at this time.
The will in the ease at bar contains a direction 1 ‘ I direct that all inheritance, estate, transfer, succession and legacy taxes shall be borne by and paid out of my residuary estate ”. This court will not pass upon the question of whether the language used was broad enough or explicit enough to exclude the apportionment of taxes against nontestamentary property because it *310 is apparent that there can never he any money in the residuary estate out of which any of the taxes assessed against the estate can be paid and in such cases our courts have consistently held that estate taxes must be apportioned pursuant to the provisions of section 124 of the Decedent Estate Law. (Matter of Caswell, 239 App. Div. 695; Matter of Halsted, 174 Misc. 292, affd. 261 App. Div. 892; Matter of Zimtbaum, 206 Misc. 432.)
But for the existence of the antenuptial agreement there would be no question with respect to apportionment in this matter and the widow would have to pay a prorata share of the tax on the property being received by her which was included in and taxed as part of the decedent’s taxable estate. It is the contention of the widow and the decedent’s former employer that the widow is a contract creditor of the estate and that as such no tax can be apportioned against the nontestamentary assets which she is receiving from Salant & Salant, Incorporated, pursuant to their contract with the decedent. In support of this contention they cite Matter of Brokaw (180 Misc. 490, affd. 267 App. Div. 811, affd. 293 N. Y. 555); Matter of Strebeigh (176 Misc. 381); Matter of Cordier (1 Misc 2d 887); Matter of Porter (12 Misc 2d 180); Matter of Patterson (73 N. Y. S. 2d 433); Matter of Fells (65 N. Y. S. 2d 553); Matter of McKeon (4 Misc 2d 931). With the exception of Matter of Patterson (supra), all of the above cases deal with provisions made by testators either by will or otherwise in fulfillment of contractual obligations which they assumed under separation agreements entered into Avith their respective spouses. In those cases the courts uniformly held that the surviving party to the separation agreement was a contract creditor or paid creditor of the decedent’s estate and even though the assets passing to the widow or ex-spouse were includable in the taxable estate for tax purposes, no tax was allocable against those assets received pursuant to the separation agreements. In effect what our courts have been saying is that the decedent had a definite contractual obligation to pay a specific sum which was a charge against his estate which could not be diminished by taxes. In Matter of Patterson (supra) the husband and wife entered into an antenuptial agreement pursuant to which the husband agreed to devise a life estate in certain real property to his wife. In his will the testator fulfilled the obligation required by the antenuptial agreement and folloAving the same reasoning as set forth in the previously cited cases the court held that the widow’s share of the estate was not subject to the payment of estate taxes because she had an enforcible claim against the *311 decedent which had to be paid in full and which could not be diminished by taxes levied against the estate.
Some confusion still seems to exist as to the roles played by the taxing authorities in fixing the tax and our State courts in allocating the burden of the tax. As stated in Matter of Galewitz (3 A D 2d 280, 292, affd. 5 N Y 2d 721): “ The Tax Law, to some extent, operates independently of the law of contracts and the laws affecting the distribution of estates. (Matter of Ryle, 170 Misc. 450). So it is that in the law of contracts we do not, generally evaluate the fairness or adequacy of the consideration, while in tax law, to prevent evasion or undesirable diversion of revenues to government, the adequacy of consideration may be closely scanned.” The taxing authorities being charged with the burden of determining whether a tax is payable and what property is includable in the tax estate do not concern themselves with consideration of the persons upon whom the ultimate tax burden will fall. However, when the tax has been assessed and paid by the estate representative it becomes the obligation of our State courts to determine in what proportions the ultimate tax burden should be borne by the recipients of property. (Edwards v. Slocum, 287 F. 651, affd. 264 U. S. 61; Matter of Ryle, 170 Misc. 450.) As in Matter of Seitz (262 N. Y. 32) and in Helvering v. United States Trust Co. (111 F. 2d 576) the taxing authorities in the case at bar have decided that the relinquishment of marital rights in the decedent’s estate by the widow was not such a consideration in “ money or moneys worth ” as would exempt the benefits going to the widow from estate tax.
As a result, this court now has the duty of equitably allocating the impact of estate taxes among the parties who received property by reason of the decedent’s death and to determine if any of those parties are exempt from such allocation even though the property they received was included in the taxable estate. (Matter of Kaufman, 170 Misc. 436; Matter of Ryle, supra.) This question has plagued our courts because of the obvious inequity which can result if the testamentary estate is forced to pay the tax on funds which are paid over by reason of a contractual relationship between the decedent and the recipient of the funds but nevertheless included in the gross estate for tax purposes.
As stated previously our courts have ruled that the benefits received as a result of a contract could not be diminished by the payment of taxes even though the property received was included in the gross taxable estate. (Matter of Brokaw, supra; Matter *312 of Strebeigh, supra; Matter of Patterson, supra.) In Matter of Galewitz (supra) the Appellate Division recognized the inequity which could result from such a hard and fast rule and the court required payment of taxes, despite a firm contract between a decedent and his son, on the excess between the purchase price of stock as fixed in the contract and its value as fixed for tax purposes. In so doing the court exonerated from tax apportionment so much of the property passing under the contract as represented the actual consideration paid by the contracting party and regarded the additional property passing under the contract as the equivalent of a testamentary bequest. To such extent the court was adopting the thinking of the tax courts and, in a manner, applying the rule of ‘ ‘ money or moneys worth ”.
It is this court’s opinion that no hard and fast rule of law can be fixed or applied which will govern all cases. In each case presented our courts must be guided by the rules of law and equity in order to mete out justice and equity to all parties interested in the estate.
The question now presented is whether the antenuptial agreement entered into between the decedent and the widow was such a contract as would exempt the benefits going to the widow from the mandate contained in section 124 of the Decedent Estate Law. As was hereinabove indicated, all of the cases relied upon by the widow involve separation agreements except Matter of Patterson (supra) which involved an antenuptial agreement. After close scrutiny of those cases and Matter of Galewitz (supra) this court is of the opinion that the cases involving separation agreements and Matter of Patterson (supra) must be distinguished.
A clear distinction between an antenuptial agreement and a separation agreement does exist. In a separation agreement, the husband in recognition and fulfillment of obligations imposed by law, agrees to make certain present and immediate provisions for his wife in discharge of his existing legal obligation to her. The parties to such an agreement by means of preliminary negotiations finally agree on a specific sum to be paid weekly, monthly or otherwise and our courts have held that the specific sum which the decedent contracted to pay must be paid in full and cannot be diminished by estate taxes even though the benefits going to the widow or ex-wife are includable in the taxable estate. This may be so even though the agreement provides for the continuation of payments after the death of the husband for who can say that, in fixing the *313 amount of the periodic payments, the parties evaluated the then existing liability of the husband or arrived at a lesser figure in consideration of the duration of the agreement.
Usually when a prospective husband and wife enter into an antenuptial agreement, the husband is voluntarily bestowing a benefit upon his wife which does not take effect until his death. In the case at bar, the decedent did exactly that although he was under no legal obligation to provide posthumous benefits for his wife at the time the antenuptial agreement was entered into. In fact, subdivision 9 (par. [d]) of section 18 of the Decedent Estate Law specificially provides that no consideration is required for the waiver of a right of election. Had the agreement not been made the widow would have received benefits under the will or, in the absence of such benefits, would have been entitled to an elective share of the estate pursuant to section 18 of the Decedent Estate Law. Any such benefits, whether received under the will or claimed under the statute, if includable in the taxable estate would have been subject to tax apportionment. The benefit under the antenuptial agreement was merely a substitute for the benefit which the widow could claim upon the decedent’s death. In effect then, the decedent herein was making a gift to his wife, to take effect upon death, which is taxable property and must be included in the gross taxable estate. (Tax Law, § 249-r; United States v. Wells, 283 U. S. 102; Butterworth v. Usry, 177 F. Supp. 197, English v. United States, 270 F. 2d 876.) Under those circumstances, this court must assume that the parties to the agreement contemplated the impact of taxes upon that gift. (Matter of Ryle, supra; Matter of Galewitz, supra.) Unless provision was made in the agreement or in the decedent’s will for the payment of taxes on the gift bestowed under the antenuptial agreement, the provisions of section 124 of the Decedent Estate Law must come into play.
Although the facts were different, this in effect was the ruling and conclusion reached by the court in Matter of Galewitz (supra). In that case the court found that the contract entered into between the decedent and his son was in effect a part sale and part gift and to the extent that it was a part gift, to wit: the difference between the contract price and the value fixed for the shares of stock by the taxing authorities, it was a part gift and the son was required to pay the tax thereon. A contract for the bestowal of a gift is not such a contract which creates a legal obligation exempt from the mandate contained in section 124 of the Decedent Estate Law. The court finds, therefore, *314 that the benefits being received by the widow pursuant to the antenuptial agreement constitute a gift to her which is taxable property against which a tax must be apportioned.
The liability of Salant & Salant, Incorporated, with respect to the payment of the tax must now be determined. A life insurance contract under the terms of which the insurance company agrees to pay stipulated monthly payments to a named beneficiary for life after the insured’s death cannot be likened to the contract between the decedent and his employer. Unlike such a contract, the employer corporation in the case at bar was not required by the terms of the contract or by law to set aside any reserve for the payments required under its contract with the decedent. Thus, at the time of the decedent’s death it could not be said that there was any fund transferred to the corporation within the meaning of Matter of Scott (249 App. Div. 542 affd. 274 N. Y. 538, cert. den. sub nom. Northwestern Mut. Life Ins. Co. v. Central Hanover Bank & Trust Co., 302 U. S. 721).
However, under its contract the corporation has a fixed liability to pay out a specific sum of money over a period of years which cannot be defeated by the death of any of the named beneficiaries and the rule of law enunciated in Matter of Bissell (283 App. Div. 624) is, therefore, not applicable.
Although the contract between the decedent and his employers, Salant & Salant, Incorporated, establishes a debtor-creditor relationship between the corporation and the persons named as beneficiaries therein, the company’s liability is limited both as to the amount of the payments and as to the due dates thereof by the terms of the contract. The liability is carried on the corporation’s books as “Deferred Compensation Payable” and is included among its other general current and future obligations. No separate fund has been created for its payment and the court must assume that it is being paid out of current corporate assets and earnings. Under these circumstances, this court cannot adopt the position urged by the trustees which would require the corporation to immediately pay the full tax allocated against the entire fund that the corporation is required to pay out over the course of 20 years. This court is powerless to change or modify the contract between the decedent and the corporation and cannot require an acceleration of the payments stipulated therein.
Despite this the liability of the corporation for the payment of the tax is clearly set forth in subdivision 5 of section 124 of the Decedent Estate Law which authorizes the executor “to recover from the persons benefited or from whoever is in pos *315 session of such property, the proportionate amounts of the tax and any interest which is or may be payable by the persons benefited ’ ’. The widow is the person benefited and the corporation is in possession of such property as and when it becomes due under the contract made by it with the decedent. Although the figure set forth in the stipulation of facts is $145,351.94, the actual commuted value of the widow’s share of the benefits to be received under the contract was fixed for tax purposes in the sum of $139,298.17. Against this sum she was allowed a marital deduction of $40,036.35. The tax on the balance of $99,261.78 must be borne and paid by the widow and Salant & Salant, Incorporated, under the mandate of section 124 of the Decedent Estate Law. As the widow has already received $79,000, the apportioned tax due on that amount should be paid by her, but if the widow is unable to meet this tax obligation, the court directs the executors to make such arrangements as may be reasonable and practicable to collect the entire tax due from the widow out of the installments payable to the widow from Salant & Salant, Incorporated, as and when they become due.
Also involved in this proceeding is the question of apportionment against the funds held by and being paid out to the decedent’s daughter by six life insurance companies pursuant to options selected by the decedent prior to his death. Only two of the life insurance companies involved have appeared in this proceeding and although they do not question their liability for the payment of the tax, they do raise an issue as to the manner in which the tax is to be recouped by them after its payment. The court has been informed that the payments being made under all of the policies involved are being made under similar selected options which provide for stipulated monthly payments for life with 240 guaranteed monthly payments. The precise question was considered by this court in Matter of Klauber (22 Misc 2d 879) and the court will adhere to the determination made in that case.
The insurance contract settlement options provide for monthly payments of a fixed sum of money for each $1,000 of insurance proceeds based upon the age and life expectancy of the primary annuitant on the date of the insured’s death. The insurance companies when making prompt payment under settlement options similar to the ones in the case at bar are fully cognizant of the impact of estate taxes upon estates and of the provisions of section 124 of the Decedent Estate Law. They know that a tax may be apportioned against the insurance proceeds, *316 which tax if immediately deducted from the face amount of the insurance proceeds would reduce the amount of the monthly payments. It, therefore, cannot be maintained that the companies do not know that they may be overpaying the annuitant. The only thing they do not know is the extent of the overpayment and that, of course, depends upon the size of the taxable estate.
Nevertheless, it is apparently their sound business judgment, induced no doubt by the desire to maintain good public relations, to take the risk of possible overpayment. This court cannot be concerned with the business risks assumed by any company in the conduct of its business. It is concerned only with an equitable solution of the problem here presented. The manner of recoupment set forth in Matter of Klauber (supra) is equitable because it spreads the tax recoupment over a period of years based upon the very tables set forth in the insurance contract as though the face amount of the insurance proceeds had been reduced by the amount of the tax immediately upon the death of the insured.
As stated in Matter of Klauber (supra, pp. 881-882): “ If by its decision the court directed the insurance companies to recoup the apportioned tax over the remaining period of the annuitant’s life expectancy, it would be flying directly in the face of the Appellate Division decision in the Matter of Bissell (283 App. Div. 624.) It is implict within the contemplation of that decision that the insurance company will no longer have any funds or property in its possession, within the meaning of section 124 of the Decedent Estate Law, after the guaranteed payments have been made. If on the other hand the court permitted the insurance companies to deduct the apportioned taxes from the present reserve funds calculated as necessary to maintain the remaining guaranteed payments, it would result in an injustice to the infant beneficiaries designated to receive the unpaid balance of the guaranteed payments upon the death of the annuitant.”
The court, therefore, directs the insurance companies to pay the apportioned taxes found to be due and to reconstitute their policies and the certificates issued thereunder as of the date of the insured’s death in order to provide a life annuity for the benefit of the annuitant with 240 guaranteed monthly payments based upon the reduced face amounts of the policies determined by deducting from the original face amount of each policy the tax apportioned against such policy. With respect to the overpayments made to the annuitant, the insurance companies may make such arrangements as they see fit to recoup from the annuitant the difference between the payments made *317 to her and the payments actually due to her under the respective policies if the taxes had been originally deducted therefrom.
The executors are directed to recompute and amend Schedule I of their account in accordance with this decision. The balance of the relief prayed for by the petitioners is granted.